Argued and submitted September 27, 2013, conviction on Count 7 reversed; remanded for resentencing; otherwise affirmed August 19, 2015, petition for review denied March 3, 2016 (358 Or 794)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID WAYNE HENDRICKS,
*Defendant-Appellant.*

Lane County Circuit Court
201100932; A148546

359 P3d 294

Mary M. Reese, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Nakamoto, Presiding Judge, and Haselton, Chief Judge, and Egan, Judge.*

----

* Haselton, C. J., *vice* Armstrong, P. J.

HASELTON, C. J.

**HASELTON, C. J.**

Defendant appeals from a judgment of conviction for three counts of fourth-degree assault (Counts 1, 4, and 5) and one count each of strangulation (Count 3), unlawful use of a weapon (Count 6), coercion (Count 7), and menacing (Count 8), all of which constituted domestic violence. Defendant asserts, *inter alia*, that the trial court erred: (1) in denying his motion for a judgment of acquittal (MJOA) as to Count 4, on the ground that the state failed to adduce evidence of the "physical injury" element of fourth-degree assault; (2) in the event that the conviction on Count 4 is affirmed, by failing to merge Count 3 and Count 4 into a single fourth-degree assault conviction; and (3) in denying his MJOA as to Count 7, for coercion, because there was insufficient evidence that defendant caused the victim to alter her course of conduct. With respect to the first assignment, we conclude that there was sufficient evidence of physical injury, and, therefore, that the trial court did not err in denying the MJOA as to Count 4. We further conclude, with respect to merger, that the trial court correctly entered separate convictions for Counts 3 and 4. Finally, we conclude that the trial court erred in denying the MJOA on the coercion charge. Accordingly, we reverse defendant's conviction as to coercion (Count 7), and remand for resentencing, *see* ORS 138.222(5)(b), but otherwise affirm.[1]

In reviewing a trial court's denial of an MJOA, we view the evidence adduced at trial in the light most favorable to the state. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995); *State v. Schneider*, 229 Or App 199, 201, 211 P3d 306 (2009). Consistently with that standard, the facts material to our review are as follows.

In January 2011, defendant and the victim, E, were in a relationship and living together in a house owned by defendant. From early January 15 through the morning of January 17, defendant engaged in an alcohol-fueled course

---

[1] Defendant also contends that the trial court erred in denying his MJOA as to unlawful use of a weapon (Count 6), arguing that the state was required, and failed, to adduce evidence of intent to physically injure the victim with a weapon. In *State v. Ziska/Garza*, 355 Or 799, 334 P3d 964 (2014), decided after the appellate briefs in this case were filed, the court rejected that contention. Accordingly, we reject that argument without further discussion.

of bizarre and threatening conduct towards E. At various points, defendant would chant phrases including "Die bitch" and "Die cunt" for prolonged periods; shout other profanities, threats, and orders at E; and blast music so loud that she could not sleep or study. E had moved into a separate bedroom, just down the hall from the bedroom that she had previously shared with defendant.

Under those circumstances, defendant attacked E several times; specifically, as pertinent to our review, during the very early morning on January 17, defendant was chanting and yelling from his bedroom. E, unable to sleep, had gone to the front room to try to study. After the chanting grew louder, E went to the doorway of defendant's bedroom and asked him to stop. Defendant, who was lying down on the bed, jumped up and lunged at E with a pillow. When he reached her, defendant covered E's face with the pillow for about a second, momentarily cutting off her breathing. E pushed defendant and broke away. Defendant, still wielding the pillow, came at E again. This time he forcefully covered her face with the pillow for about five seconds, simultaneously pinning her to the wall. During that five-second period, E could not breathe. "In survival mode" and fearing "he was going to kill [her]," E struck defendant and "got him away from [her] face."

E then attempted to return to the living area. She wanted to retrieve her study materials and then retreat to the bedroom. On her way to the living area, E told defendant, who was still in or near the hallway, that she wanted her books. As she was attempting to pass, defendant grabbed her and began pummeling her, striking her head "over and over and over."

E, apparently able to extricate herself from defendant's grasp, made her way to the living area. She grabbed her books, and headed back down the hallway towards her bedroom. At that point, defendant intercepted her again. E tried to stab defendant with a pencil but missed, accidently stabbing herself. He began to push her towards the bedroom, cussing at her and ordering her to get into the bedroom. According to E, as defendant was "shoving" her into the bedroom: "He was on my back, telling me to get into my—get into my bedroom where I belong."

E eventually called 9-1-1. Defendant, who was arrested later that morning, was charged with multiple offenses. As relevant here, based on the allegations relating to his covering E's face with a pillow, the state charged him with both strangulation, ORS 163.187 (Count 3), and fourth-degree assault, ORS 163.160 (Count 4).[2] Defendant was also charged with a single count of coercion, ORS 163.275 (Count 7); the indictment did not specify the predicate conduct for that charge.[3]

At trial, once the state had presented its case-in-chief, defendant moved for a judgment of acquittal on the assault and coercion counts. With respect to the operative fourth-degree assault charge, defendant asserted that there was no proof that E had suffered "physical injury," within the meaning of ORS 163.160, as a result of the pillow attack. The state countered that any "impairment of the ability of the body to function in a normal manner for any amount of time" was sufficient—and that not being able to breathe "for any amount of time" constituted such impairment.

As to coercion, defendant argued that there was "no act that a jury [could] settle on * * * that [the victim] lawfully had a right to do but she abstained from doing." Defendant further argued that his conduct (described above) in ordering and pushing E into her bedroom did not constitute coercion because she was going there on her own volition anyway.

The trial court denied the MJOA as to both counts. It agreed with the state that the "physical injury" component of fourth-degree assault has no durational requirement and that the victim's testimony provided sufficient evidence of impairment. As to coercion, the trial court reasoned that

_____

[2] The operative charging instrument, the "superseding indictment," alleged, as to Count 3, that defendant "knowingly impede[d] the normal breathing or circulation of the blood of [E] by applying pressure on the throat or neck or blocking the nose or mouth of said victim."

As to Count 4, the superseding indictment alleged that defendant "unlawfully and recklessly cause[d] physical injury to [E]."

[3] As to Count 7, the superseding indictment alleged that defendant "did unlawfully and knowingly compel or induce [E] to engage in or abstain from engaging in conduct in which [she] had a legal right to engage or abstain from engaging by means of instilling in [her] a fear that if [she] refrained from the conduct or engaged in the conduct contrary to the compulsion or inducement the said defendant would unlawfully cause physical injury."

the evidence of defendant's actions and words during the bedroom incident was sufficient to show that "he was compelling her to go someplace that she had a right not to go."

Near the end of the trial, the parties submitted their proposed jury instructions. The state requested Uniform Criminal Jury Instruction (UCrJI) 1433, relevant to coercion that occurs when a defendant causes another "*to abstain from engaging in conduct*" that he or she has the right to engage in. ORS 163.275(1) (emphasis added). We note—because it is highly significant to our review of the denial of the MJOA on the coercion count—that the state did not request that the jury be instructed under UCrJI 1432, which relates to the species of coercion that occurs when a defendant "compels or induces another person *to engage in conduct* from which the other person has a legal right to abstain." ORS 163.275(1) (emphasis added). Neither party excepted to the jury instructions. Accordingly, the jury was instructed as follows:

> "In this case, to establish the crime of Coercion, the State must prove beyond a reasonable doubt the following four elements:
>
> "* * * * *
>
> "3. [Defendant] intentionally *compelled or induced [E] to abstain from engaging in conduct that [E] had a legal right to engage in.*
>
> "And 4. This compelling or inducing was accomplished by means of instilling in [E] that if [she] refrained from the conduct or engaged in the conduct contrary to the compulsion or inducement, * * * defendant would unlawfully cause physical injury to some person."

(Emphasis added.)

The jury found defendant guilty of all charges except one count of fourth-degree assault (Count 2).[4] At sentencing, the trial court denied defendant's request that the guilty

---

[4] During deliberations, there was a question from the jury: "Do Counts 3 and 4 refer to either one of the alleged uses of the pillow or both alleged uses of the pillow? If only one alleged use of the pillow, which one?" After both parties stipulated their agreement, the trial court answered: "Either instance regarding use of the pillow, providing that at least ten of you agree on the same instance."

verdicts on Count 3 (strangulation) and Count 4 (fourth-degree assault) be merged into a single conviction. The trial court acknowledged that Counts 3 and 4 were "based on the exact same conduct," but explained that they "clearly don't merge" because "each statutory provision requires proof * * * of elements that the other doesn't."

As noted, on appeal, defendant assigns error to the trial court's denial of his MJOAs as to one count of fourth-degree assault and the single count of coercion, as well as its entry of separate convictions for strangulation and fourth-degree assault based on the same predicate conduct.

We begin with defendant's challenge to the sufficiency of the state's proof of fourth-degree assault, which we review for whether, after viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *Cunningham*, 320 Or at 63.

Defendant renews his argument that "[i]nterfering with a person's breathing by blocking the person's nose and mouth for one to five seconds does not, without more, constitute physical injury." Relying on case law—which, according to defendant, stands for the proposition that "minor impairment of a body part for a short amount of time is not sufficient impairment"—defendant equates "momentarily" impeding breathing with an inconspicuous, quick-healing "slight scrape or cut" and "blows and kicks that did not result in bruises or swelling."

The state defends the trial court's approach, emphasizing that there is no durational requirement for the "impairment of physical condition" variant of "physical injury" at issue here. It asserts that "the involuntary cessation of breathing—a vital bodily function"—in and of itself constitutes the requisite impairment, because defendant's action (pushing a pillow over the victim's face and holding it there), "resulted in a reduction of the victim's ability to use her respiratory system for a period of time, even though that time was not protracted."

We agree with the state. As amplified below, based on the totality of the circumstances, including that E, as

a result of defendant's conduct, was completely unable to breathe for a period of time, causing her to fear for her survival, a jury could reasonably infer that she suffered an "impairment of physical condition," fulfilling the state's obligation to prove the "physical injury" element of fourth-degree assault. In explaining that conclusion, we describe the pertinent statutes, discuss the definition and contours of the "impairment of physical condition" variant of "physical injury," and identify various considerations, which, depending on the circumstances, may or may not be material to that determination.

ORS 163.160(1) establishes the crime of fourth-degree assault:

> "A person commits the crime of assault in the fourth degree if the person * * * [i]ntentionally, knowingly or reck-lessly causes *physical injury* to another."

(Emphasis added.) The "physical injury" requirement limits the sweep of ORS 163.160(1) to those circumstances where "some form of external violence * * * produces a harmful effect upon the body"; that is, circumstances which involve "the infliction of actual physical injury"—but not "[p]etty batteries not producing injury." *State v. Capwell*, 52 Or App 43, 47 n 3, 627 P2d 905 (1981); *see State v. Sallinger*, 11 Or App 592, 597-99, 504 P2d 1383 (1972) (comparing various assault provisions with "physical injury" component to harassment statute requiring only "offensive physical contact"); *see also State v Lindsey*, 45 Or App 607, 609-10, 609 P2d 386 (1980) (where the victim's only "injury" was a torn shirt, reversing for insufficient evidence of physical injury).

ORS 161.015(7), in turn, defines the term "physical injury" as meaning "impairment of physical condition or substantial pain." Thus, evidence establishing *either* an impairment of a physical condition *or* substantial pain will support an assault conviction. *State v. Poole*, 175 Or App 258, 261, 28 P3d 643 (2001). Here, only the former is at issue. Consequently, the inquiry narrows to whether the circumstances here—a complete traumatic preclusion of breathing for five seconds, causing E to fear for her survival—constitutes an "impairment of physical condition" and, hence, "physical injury" for purposes of ORS 161.015(7).

"Impairment of physical condition" is not defined by statute. However, in *State v. Higgins*, 165 Or App 442, 446-47, 998 P2d 222 (2000), we construed that term, employing the methodology prescribed in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Based on a textual analysis, we first noted that the legislature intended the term to mean "harm to the body that results in a reduction in one's ability to use the body or a bodily organ." *Higgins*, 165 Or App at 446. We then addressed, by reference to the definition of "serious physical injury," ORS 161.015(8), and negative inference, the durational aspect of the requisite "impairment." Specifically, we noted that "serious physical injury" included, in part, physical injury that "causes *protracted* loss of health or *protracted* loss or impairment of the function of any bodily organ," ORS 161.015(8)[5] (emphasis added), and determined that "physical injury" embraced the universe of other (*i.e.*, non-"protracted") impairment of a bodily organ. Accordingly, we concluded that

"impairment of physical condition means harm to the body that results in a reduction in one's ability to use the body or a bodily organ for less than a protracted period of time."

*Id.* at 446-47.

Thereafter, in *State v. Hart*, 222 Or App 285, 291, 193 P3d 42 (2008), in holding that a half-inch gash on the back of the victim's neck constituted a "physical injury," we clarified that *Higgins*'s construction encompasses not only impairment to voluntary "uses" of the body but also impairment to the ordinary (and involuntary) functioning of a body part:

"[T]he ability to 'use' one's body refers not only to the ability to put the body into action, * * * but also to the ability of the body to function in a normal manner. * * * [O]ur statement that 'impairment of physical condition means harm to the body that results in a reduction in one's ability to use the body or a bodily organ,' should be understood to include not only impairment of voluntary use of a body part, but also of the ordinary *function* of a body part."

*Id.* at 291 (internal citations omitted; emphasis in original).

[5] ORS 161.015(8) provides that "'[s]erious physical injury' means physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."

*Higgins*, as amplified in *Hart*, represents an admirable effort to bring some coherence to our assessment of the legal sufficiency of proof of "physical injury." In truth, there was an unsatisfying "not-too-hot; not-too-cold" quality to many of our decisions; others were starkly conclusory, verging on the "we know it when we see it" genre.

Still, *Higgins*'s formulation, while identifying and distilling salient principles, is not—and was never intended to be—inflexibly literal and categorical. Rather, as we at least implicitly acknowledged in *Hart*, ongoing explication and refinement is not only appropriate, but inevitable. That is so for at least two interrelated reasons. *First*, *Higgins*'s formulation does not exist in a vacuum. Rather, it will invariably be invoked, as it is here, in the context of an MJOA—which, in turn, can implicate a variety of case-specific circumstances, many (obviously) never anticipated, much less addressed, in *Higgins*.

*Second*, *Higgins*'s construction is—at least at its margins—imprecise, with the imprecision that inheres in the limitations of language. Consequently, "bright-line" certitude is a delusion.[6] To be sure, in the generality of cases, the meaning and application of *Higgins*'s formulation will be straightforward. But "close" or idiosyncratic cases reveal and highlight interstitial gaps and ambiguity. In such cases, rote, mantra-like resort to the text of the "template" is an exercise in question-begging: A result cloaked in the fig leaf of a formulaic label. Conversely, ultimately principled consideration must acknowledge and engage with ambiguity and nuance by reference to the considerations that underlie the formulation and that have at least implicitly informed its precedential application.

---

[6] "When we become too sure of our premises, we necessarily fail in what we are supposed to be doing.

"* * * [T]he beginning of wisdom lies in the recognition that the body of law, at any time or place, is an unstable mass in precarious equilibrium * * *. [T]he principal lesson to be drawn from our study is that the part of wisdom is to keep our theories open-ended, our assumptions tentative, and our reactions flexible."

Grant Gilmore, *The Ages of American Law* 110 (1977); *see also For Grant Gilmore, A Student's Lament*, Yale Law Report at 10, 11 (Fall/Winter 1982-83) ("Like a radioactive substance, [law] renews itself through a process of continual decay." (Ascribed to Professor Gilmore.)).

Two common and consistent principles characterize our "physical injury/impairment of physical condition" precedents—both those that antedated *Higgins* and those that have since applied its construct: (1) The impairment must be material, and not merely *de minimis*; and (2) materiality is a function of a variety of case-specific circumstances, including the character, degree, and duration of the asserted impairment.

The first principle is manifest in our case law relating to cuts, scratches, and scrapes. A wound that breaks the skin and causes bleeding can compromise and impair—however momentarily and minimally—the skin's function of "protect[ing] the inner body from infection." *Hart*, 222 Or App at 291. Nevertheless—including in *Higgins* itself—we have consistently distinguished between minor lacerations and others that are more acute and take longer to heal. *Compare Higgins*, 165 Or App at 444-47 ("four to six red scrape marks" to a victim's neck and arm, which occurred after the defendant "slapped and clawed" him, were too "slight" to constitute impairment); *State v. Rice*, 48 Or App 115, 117, 616 P2d 538, *rev den*, 289 Or 741 (1980) ("slight cut" to the cheek did not constitute an impairment of physical condition), *with State v. Jones*, 229 Or App 734, 736-38, 212 P3d 1292, *rev den*, 347 Or 446 (2009); *Hart*, 222 Or App at 291-92 (reasoning that a "heavy scrape, approximately an inch and a half wide, maybe four inches long," and a bloody "half inch gash" on back of victim's head could disrupt the skin's ability to "protect the inner body from infection").[7] Thus, *Higgins* itself contradicts a categorical understanding that *any* "reduction in [the] ability to use *** a bodily organ," however minimal and momentary that reduction, is an actionable "impairment" within the meaning of ORS 161.015(7).

The distinction between legally insufficient *de minimis* effect and actionable impairment may depend on a

---

[7] *Cf. State v. Lewis*, 266 Or App 523, 527, 337 P3d 199 (2014) (where alleged harm was the loss of a clump of hair, noting lack of bleeding or broken skin as demonstrating that skin's function was not impaired); *State v. Wright*, 253 Or App 401, 406, 290 P3d 824 (2012) (noting with respect to bruising, "the skin did not break, which is evidence from which a jury can infer impairment of the skin's ability to ward off infection").

combination of variables. Consider, for example, the difference between a slight five-second decrease in hearing and a total five-second cessation of cardiac function. Or the difference between a moderate five-second reduction in hearing and a moderate reduction of hearing over a period of hours or days. The nature of the affected bodily function or organ, the degree of effect, and its duration may all properly bear on the assessment of legally sufficient impairment.[8]

With those principles and considerations reiterated, we return to the circumstances of this case. Specifically, the proof, viewed most favorably to the state, established that defendant forcibly held a pillow over E's mouth and nose, preventing her from breathing for up to five seconds and causing her to fear for her life. Were those circumstances legally sufficient to permit a jury to determine that defendant had caused "physical injury" by "impairment of a physical condition"—specifically material impairment of E's respiratory function? We conclude that they were.

Our conclusion rests on the combination of the character of the affected bodily function, the degree of impairment, and the duration of the impairment. The respiratory function—like the cardiac function in one of the rhetorical ruminations above—is, literally, existential. Further, the impairment was total, not partial: E could not breathe at all.

Thus, the question reduces to whether, notwithstanding the combination of the first two considerations, the durational aspect was so brief as to preclude, as a matter of law, a reasonable juror from finding the requisite material

---

[8] Other potentially pertinent considerations referred to in our decisions include whether the victim required medical attention—*compare Hart*, 222 Or App at 292 (emphasizing that the victim was advised to go the hospital), *with Higgins*, 165 Or App at 447 (observing that victim did not need medical attention)—and the time required for healing, *see Rice*, 48 Or App at 117 (noting the complainant's cut healed quickly and did not scar).

In addition, the collateral physical consequences of pain, albeit *less than* "substantial pain," associated with physical trauma may be probative of "impairment of physical condition." *Compare State v. Glazier*, 253 Or App 109, 113, 288 P3d 1007 (2012), *rev den*, 353 Or 280 (2013) (pain and soreness arising from the defendant's conduct, including dragging, striking, and kicking the victim, "made it more difficult for [the victim] to engage in normal activities such as walking up and down stairs and lifting small objects"), *with Wright*, 253 Or App at 405 (victim "did not exhibit any evidence of pain"); *Higgins*, 165 Or App at 447 (no pain); *Rice*, 48 Or App at 117 (no pain).

impairment of bodily function. Obviously, completely, forcibly preventing someone from breathing for a minute would be sufficient—but for a matter of seconds? We cannot, and will not, pretend to pronounce a "principled" distinction between one second—or three seconds—or five. However, we can, and do, hold that where, as here, the duration of complete preclusion of breathing was sufficient to cause the victim to fear for her survival, a reasonable juror could find that the duration of defendant's conduct was sufficient to have materially impaired the victim's bodily function. Accordingly, the trial court did not err in denying the MJOA, and we affirm defendant's conviction on Count 4 for fourth-degree assault.

We turn to whether the guilty verdicts on Counts 3 and 4 should have merged into a single conviction. We review the trial court's decision to not merge those verdicts for legal error. *State v. Watkins*, 236 Or App 339, 345, 236 P3d 770, *rev den*, 349 Or 480 (2010). As appellant, defendant bears the burden of demonstrating, as a matter of law, that the trial court so erred. For the reasons below, we affirm the trial court's determination.

Under, ORS 161.067(1),[9] the "anti-merger" statute, a single criminal act gives rise to multiple convictions if three conditions are satisfied: "(1) defendant must have engaged in acts that are the same criminal conduct or episode; (2) defendant's acts must have violated two or more statutory provisions; and (3) each statutory provision must require proof of an element that the others do not." *State v. Parkins*, 346 Or 333, 348, 211 P3d 262 (2009) (quotation marks omitted).

The parties do not dispute that the first two conditions are met. Only the third condition is at issue. To that end, defendant argues that the strangulation and fourth-degree assault charges, as pleaded in this case, are not separately punishable because strangulation qualifies as a lesser-included variant of fourth-degree assault. According

---

[9] ORS 161.067(1) provides that, "[w]hen the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

to defendant, "all elements of the crime of strangulation are subsumed within the elements of the crime of fourth-degree assault," because, as a practical matter, "it is not possible to commit the former crime without also committing the latter." The state responds that that argument is unavailing because it is premised upon the factual circumstances of any particular case—and not on the statutory elements of the offenses as pleaded.

Our analysis is governed by well-settled principles:

> "The question is whether * * * each of the statutory provisions requires proof of an element that the other does not. Generally, only the statutory elements of the offenses are compared; the facts as alleged in the indictment or found by the factfinder are not relevant. However, when a statute contains alternative forms of a single crime * * * we will look to the indictment to determine which form is charged, and we use the elements of the charged version in the merger analysis."

*State v. Alvarez*, 240 Or App 167, 171, 246 P3d 26 (2010), *rev den*, 350 Or 408 (2011) (citations omitted); *see also State v. Baker*, 265 Or App 500, 502, 336 P3d 547 (2014) ("In considering whether two counts merge * * * what matters is whether all *elements* of one offense are subsumed within the elements of the other offense, and not whether other facts, like the 'underlying factual circumstances of the crime,' might overlap to that degree." (Emphasis in original.)).

Based on the superseding indictment, *see* 273 Or App at 5 n 2, the state was required to prove, as to strangulation, that defendant (1) knowingly (2) impeded the victim's normal breathing or circulation of the blood (3) by applying pressure on the victim's throat or neck or blocking her nose or mouth. As to fourth-degree assault, the state was required to prove that defendant (1) recklessly (2) caused (3) physical injury to the victim.

The verdicts do not merge. We reject defendant's contention that, as pleaded here, strangulation is the "lesser-included" of fourth-degree assault, because the former requires proof not required by the latter. The two offenses have different requisite culpable mental states—and a crime that requires proof of a knowing mental state cannot be the

"lesser-included" of a crime with a reckless mental state.[10] The state alleged a knowing mental state as to strangulation and a reckless one as to assault. That knowing mental state elementally requires different proof than is required to prove recklessness. *Compare* ORS 161.085(8) ("'Knowingly' *** means that a person acts with an awareness that the conduct of the person is of a nature so described or that a circumstance so described exists."), *with* ORS 161.085(9) ("'Recklessly,' *** means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."); *cf. State v. Noe*, 242 Or App 530, 532, 256 P3d 14 (2011) ("[Unauthorized use of a vehicle] requires proof of an element that [possession of a stolen vehicle] does not have: knowledge.").

In addition, the elements of strangulation, which require proof of engaging in a specific means (applying pressure on the throat or neck or blocking the nose or mouth) toward a specific end (impeding normal breathing or circulation), require different proof than the elements of fourth-degree assault, the elements of which contemplate a vast array of actions resulting, either directly or indirectly, in physical injuries.

The question of whether the verdicts should nevertheless be merged thus reduces to whether fourth-degree assault requires proof of an element not required for strangulation. The resolution of that question depends, in turn,

---

[10] Proof of recklessness does not necessarily establish that a person acted knowingly. *Cf. State v. Enyeart*, 266 Or App 763, 768, 340 P3d 57 (2014) (an intentional mental state of one offense "is not subsumed in the knowing mental state" of another: "proof that a person acted intentionally establishes that the person acted knowingly, *but not vice versa*" (emphasis added)).

Conversely, "[w]hen recklessness suffices to establish a culpable mental state, it is also established if a person acts intentionally or knowingly." ORS 161.115(3). Thus, a reckless mental state is necessarily "subsumed" within a knowing or intentional mental state, because its evidentiary requirements are "incorporated into"—or, perhaps more precisely, superseded by—proof that a defendant acted with a more conscious culpable mental state. *See State v. Christian*, 249 Or App 1, 7 n 4, 274 P3d 262 (2012), *aff'd*, 354 Or 22, 307 P3d 429 (2013).

on whether the "physical injury" element of fourth-degree assault—specifically as construed here to require a material impairment of physical condition—necessarily encompasses the "impeding the normal breathing or circulation of the blood" element of strangulation. As noted, it was, and is, incumbent on defendant, as appellant, to establish that premise. Defendant has not done so. Beyond a single conclusory assertion, defendant develops no cogent argument as to why, given the context and legislative history of the strangulation statute, ORS 163.187—which was enacted long after the fourth-degree assault statute, ORS 163.160[11]—its textually unique "impeding the normal breathing or circulation of the blood" element is qualitatively and functionally embraced within the "physical injury" element of fourth-degree assault. Accordingly, we decline to consider that inadequately developed contention.[12] *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.").

The only remaining issue is the trial court's denial of defendant's MJOA as to coercion. On appeal, the parties substantially reprise their arguments regarding the sufficiency of the evidence, focusing on two incidents: (1) when defendant seized and pummeled E in the hallway, as she attempted to retrieve her study materials from the living room; and (2) when he shoved E into her bedroom while verbally ordering her to go there. *See* 273 Or App at 3-4. We conclude that, on this record, there was insufficient evidence from which a rational jury could, consistently with the instructions in this case, find defendant guilty of coercion.

ORS 163.275(1) embraces two circumstantially distinct alternative variants of coercion: A person commits the

---

[11] ORS 163.187 was enacted in 2003. Or Laws 2003, ch 577, § 2. ORS 163.160 was enacted in 1977. Or Laws 1977, ch 297, § 5.

[12] Given the procedural posture of this case, we imply no view as to how, upon presentation of a cogently developed argument, we might resolve the proper relationship between those elements of strangulation and fourth-degree assault.

crime of coercion by compelling or inducing another person either (a) "to engage in conduct from which the other person has a legal right to abstain" or (b) "to abstain from engaging in conduct in which the other person has a legal right to engage." Here, as noted, the jury was instructed—at the state's request—in such a way as to limit its consideration solely to the latter. *See* 273 Or App at 5-6. Specifically, the jury was instructed that, in order to find defendant guilty of coercion, it had to find that defendant "intentionally compelled or induced [E] *to abstain from engaging in conduct that [E] had a legal right to engage in.*" (Emphasis added.) Accordingly, our review of the sufficiency of the evidence of coercion is "circumscribed" by that instruction. *See Northwest Natural Gas Co. v. Chase Gardens, Inc.*, 333 Or 304, 310, 39 P3d 846 (2002) ("[O]ur review of the record is circumscribed by the case actually presented to the jury through pleadings, evidence, and jury instructions."); *cf. Hill v. Mayers*, 104 Or App 629, 632, 802 P2d 694 (1990), *rev den*, 311 Or 187 (1991) ("[W]hen a case has been heard on a particular theory in the trial court, on appeal the parties are restricted to the theory on which the case was tried.").[13]

Thus, the state was required to prove: (1) defendant intentionally compelled or induced the victim to abstain from doing something (2) that the victim had a right to do, (3) by making the victim afraid that if she did not comply, physical injury would result. *State v. Pedersen*, 242 Or App 305, 311, 255 P3d 556, *rev den*, 351 Or 254 (2011); *State v. Phillips*, 206 Or App 90, 95, 135 P3d 461, *rev den*, 341 Or 548 (2006).

---

[13] Although we have found no precedent expressly applying that construct in a criminal case, we perceive no (principled) reason not to do so. *Accord State v. Schoen*, 348 Or 207, 211-12, 213 n 2, 228 P3d 1207 (2010) (determining scope of appellate review of preservation and MJOA by reference to "the context of the case as it was charged and tried," including the theory of the case on which the jury was instructed); *cf. State v. Burgess*, 352 Or 499, 504, 287 P3d 1093 (2012) ("[I]t would be fundamentally unfair * * * to sustain defendant's conviction on a separate factual and legal theory that has been proffered by the state for the first time on appeal.").

Indeed, as we have consistently reiterated, a jury is presumed to have followed its instructions, *see, e.g., Purdy v. Deere and Company*, 355 Or 204, 227, 324 P3d 455 (2014) (noting that courts have adhered to that presumption "for many years")—and a rational jury can determine guilt only by reference to the theory of a crime on which it was instructed.

Here, the only even colorable circumstantial predicate for coercion consonant with the jury instructions was defendant's grabbing and pummeling E in the hallway, the details of which are discussed in greater detail below. Nevertheless—and regardless of defendant's other criminal culpability for that violent conduct[14]—that circumstance was legally insufficient to establish that defendant intentionally, by threatening physical injury, compelled or induced E "to abstain from engaging in conduct in which [she had] a legal right to engage." That is so for either of two independently sufficient reasons. First, the evidence, viewed most favorably to the state, does not establish, even by way of a non-speculative inference, that defendant possessed the requisite intent. Second, the evidence was legally insufficient to establish that E abstained from any conduct in which she was legally entitled to engage as a result of some threat of physical injury by defendant. *See Pedersen*, 242 Or App at 313 ("The essence of coercion is fear-induced compliance, *i.e.*, the victim complies *because he or she is afraid*." (Emphasis in original.)); *State v. Johnson*, 110 Or App 362, 363, 822 P2d 153 (1991) ("Coercion requires proof that the victim was actually compelled or induced to abstain from engaging in the conduct in which she had a right to engage or not to engage.").

Again, the evidence viewed most favorably to the state was that defendant grabbed E in the hallway, as she was on her way to the living room to retrieve some books, and beat her in the head repeatedly. Defendant, heavily intoxicated, was swinging wildly and indiscriminately. In E's words: "He was just kind of waling. Just trying to hit wherever he could hit, wherever he can get it." E also described her own mental state: "It just seemed like it wasn't going to stop." "I tried to go somewhere else. I didn't want to deal with it. I just tried to find a different, peaceful—I just— just wanted to go somewhere else. I just didn't want to deal with it." The record does not disclose exactly how the attack ended, but E continued on to the living area immediately thereafter.

---

[14] Indeed, defendant was convicted of fourth-degree assault (Count 5) based on that same conduct. The jury found that he "recklessly caused physical injury" to E by striking her in the head.

That record does not permit a legally sufficient, nonspeculative inference that defendant intended to keep E from engaging in identifiable legally privileged conduct. It simply establishes that defendant assaulted E. There is no evidence probative of defendant's specific intent, if any, in engaging in that assaultive conduct. For example, there is no evidence of what, if anything, defendant said to E; nor is there evidence of some expressive gesture or act that might reasonably be said to imply that defendant assaulted E to compel her to abstain from engaging in any conduct in which she had "a legal right to engage." ORS 163.275(1). Certainly, nothing in E's testimony suggests that she perceived or understood defendant's conduct to be so actuated and calculated.

Further—and perhaps concomitantly—the above-described circumstances were legally insufficient to establish that E abstained from doing anything, much less that she did so as a result of fear induced by an express or implied threat of physical injury. To be sure, as a purely *physical* matter, defendant's assaultive conduct obstructed and delayed E's movement, but nothing in the record, including E's testimony, suggests that, in any event, she acted as a result of "fear-induced compliance." *Pedersen*, 242 Or App at 313.[15]

In sum, the evidence was legally insufficient to support a conviction on the sole theory submitted for the jury's consideration as to Count 7.[16] Accordingly, the trial court erred in denying the MJOA on that count.

Conviction on Count 7 reversed; remanded for resentencing; otherwise affirmed.

---

[15] *Compare Pedersen*, 242 Or App at 313 (the fact that an officer did not issue a citation "because he and defendant were preoccupied with other matters (including, ultimately, an exchange of gunfire), does not establish that he was induced by a fear that, if he did write a ticket, defendant would physically injure him"), *with Phillips*, 206 Or App at 96-97 (holding that a rational jury could infer that the 12-year-old victim "complied out of fear of what [the defendant] might do to her if she did not," based on evidence that, when she objected to watching a pornographic movie, the 25-year-old defendant locked the door, pushed her back down onto the couch, and told her to watch).

[16] The state's proof of the incident in which defendant shoved E into her bedroom is unavailing, because that, at most, related to whether defendant *had compelled E to engage in conduct in which she had a legal right to abstain*—a theory on which, at the state's election, the jury was not instructed.