Submitted February 13, 2019, affirmed March 18, 2020

# STATE OF OREGON,
## *Plaintiff-Respondent,*
*v.*
## NICHOLAS PATRICK MERRILL,
## *Defendant-Appellant.*

### Multnomah County Circuit Court
### 16CR54578; A165105

463 P3d 540

Defendant appeals from a judgment of conviction for felony fourth-degree assault constituting domestic violence, ORS 163.160, and felony strangulation constituting domestic violence, ORS 163.187. Raising three assignments of error, defendant argues that the trial court erred in its denial of his motion for judgment of acquittal as to assault. This is the first of two opinions issuing today in which a defendant asserts that *State v. Hendricks*, 273 Or App 1, 359 P3d 294 (2015), was wrongly decided, arguing that, in light of legislative history, a temporary interruption of breathing is legally insufficient to constitute a physical injury or impairment of condition for purposes of assault, thus requiring the strangulation and assault verdicts to merge. *Held*: The evidence was legally sufficient to support a conviction of assault. Additionally, in contrast with the defendant's argument in *State v. Mailman*, 303 Or App 101, 463 P3d 20 (2020), defendant's failure to challenge Hendricks below does not preclude consideration of that argument on appeal. Moreover, it is possible to prove the elements of assault, without also necessarily proving all the elements of strangulation. Thus, the two do not merge, and the trial court did not err.

Affirmed.

Kenneth R. Walker, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Leigh A. Salmon, Assistant Attorney General, filed the briefs for respondent.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

JAMES, J.

Affirmed.

**JAMES, J.**

Defendant appeals from a judgment of conviction for felony fourth-degree assault constituting domestic violence, ORS 163.160, and felony strangulation constituting domestic violence, ORS 163.187. On appeal, defendant's first and second assignments of error both concern the interplay between the strangulation and fourth-degree assault statutes.[1] Defendant acknowledges that both assignments are controlled, in part, by our opinion in *State v. Hendricks*, 273 Or App 1, 359 P3d 294 (2015), *rev den*, 358 Or 794 (2016), wherein we held that the act giving rise to a count of strangulation under ORS 163.187—for example, a temporary blockage of airflow—can also constitute a material impairment of physical condition for purposes of proving physical injury under the assault statute, ORS 163.160. Additionally, in *Hendricks*, we declined to consider the undeveloped argument that assault and strangulation convictions based on the same act should merge, pursuant to ORS 161.067(1):

> "Beyond a single conclusory assertion, defendant develops no cogent argument as to why, given the context and legislative history of the strangulation statute, ORS 163.187—which was enacted long after the fourth-degree assault statute, ORS 163.160—its textually unique 'impeding the normal breathing or circulation of the blood' element is qualitatively and functionally embraced within the 'physical injury' element of fourth-degree assault. Accordingly, we decline to consider that inadequately developed contention."

*Hendricks*, 273 Or App at 16 (footnotes and citation omitted).

Defendant argues, however, that *Hendricks* was wrongly decided, and we should disavow it. In his first assignment, defendant challenges the trial court's denial of his motion for judgment of acquittal as to assault, arguing that *Hendricks*'s holding—that a limited interruption of breathing can constitute a material impairment of physical condition for purposes of proving physical injury under the assault statute—was plainly erroneous in light of legislative history not presented to us in *Hendricks*, and should therefore be disavowed. We decline to do so. Additionally,

---

[1] We reject defendant's third assignment of error without discussion.

we conclude that the evidence here, viewed in the light most favorable to the state, as is the standard on a motion for judgment of acquittal, was legally sufficient to support a conviction of assault.

In his second assignment of error, defendant presents the more developed merger argument absent from *Hendricks*, arguing that both the *mens rea* and *actus rea* components of strangulation are "subsumed" under the assault statute, and that, in light of *Hendricks*, "every strangulation is also, by definition, an assault" and, accordingly, merger is required under ORS 161.067(1). We conclude otherwise. As we explain, the two statutes proscribe differing mental states, and acts that can often, but need not always, overlap. We conclude that strangulation, as defined by ORS 163.187, is not subsumed under assault, as defined by ORS 163.160, and therefore affirm.

"In considering a trial court's ruling on a motion for judgment of acquittal, we state the facts in the light most favorable to the state, reviewing 'to determine whether a rational trier of fact *** could have found the essential element of the crime beyond a reasonable doubt.'" *State v. Pucket*, 291 Or App 771, 772, 422 P3d 341 (2018) (quoting *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995)) (omission in original). When a trial court's denial of a motion for judgment of acquittal depends on its interpretation of a statute, this court reviews the trial court's interpretation for legal error. *State v. Stewart*, 282 Or App 845, 848, 386 P3d 688 (2016). Whether two guilty verdicts merge into a single conviction is an issue of law. *See State v. Crotsley*, 308 Or 272, 280, 779 P2d 600 (1989) (holding that separate first- and third-degree convictions could be imposed for a single act of rape or sodomy as a matter of law); *State v. Glazier*, 253 Or App 109, 115, 288 P3d 1007 (2012), *rev den*, 353 Or 280 (2013).

Much of defendant's argument on appeal is legal, and not factually dependent. On those arguments that are factually dependent, many of the critical facts are undisputed. G and defendant had been married for 14 years and had two children. The incident underlying the charges occurred on August 30, 2016. Defendant and G had been

arguing for some time over domestic matters. When G got home, the children were either outside on the patio or watching TV on the couch close to the kitchen and patio. G went to the patio, which was close to the kitchen window. Defendant opened the window and screamed and yelled at G. G went to a bedroom and lay down on the bed. Defendant followed G back, continued to yell at her, and screamed at her to "get out." Defendant approached G, put his hands around her throat, and pushed her into the pillow. She screamed but no sound came out because she could not get air. She described the incident as "very fast."

Defendant threw G on the hardwood floor injuring her knee. One of the children saw defendant put his hands around G's neck and throw her down. G heard the child scream, and the child then jumped on defendant and started hitting him. Defendant did not hurt the child. He went to a closet, grabbed a bottle of vodka, and left. G called 9-1-1. She told the operator that she was trying to leave her husband, that he just grabbed her by the throat and threw her to the ground, and that he had just grabbed a bottle of vodka and gone outside. G declined medical assistance.

Officers on the scene after the incident did not take pictures of G's neck but observed redness with "thumb kind of imprints" that were consistent with G's description. In addition, G called her friend Neve that night and told Neve about what happened. The next day, Neve met with G and observed a slight puffiness and redness on the sides of G's neck.

At the close of the state's case, defendant moved the trial court to require the state to elect, for purposes of fourth-degree assault, whether it was proceeding on a theory that defendant caused physical injury to G's knee or that defendant caused physical injury by strangling G. Rather than elect, the state opted to present both theories, and request a jury concurrence instruction.

Defendant responded by moving for a judgment of acquittal on the strangulation theory of assault. Defendant summarized the state's evidence of strangulation and argued that "there was no indication that it would rise to the definition of physical injury as the potential of either

impairment of her physical condition or substantial pain, as required under the definition for physical injury."

The state argued, based on *Hendricks*, that "strangulation and impairment of the breathing is in and of itself impairment of a bodily function * * *." In response, defendant reviewed *Hendricks* and argued that,

> "for physical injury to occur there, they are talking about more than just a fleeting act. And the evidence that you heard was very—was distinguishable from the evidence in this case. This is a case where somebody put, the evidence was, a pillow over their face. It talked about a longer period of not being able to breathe, et cetera."

The court noted that the time period in *Hendricks* was "[f]ive seconds." Defendant argued that it was still "a longer period. My recollection is that [G] said for just a couple of seconds. It's a very different fact scenario." Defendant agreed that, in some cases, strangulation could constitute physical injury, but argued that "this particular case is not the case."

The trial court denied defendant's motion. In its closing argument, the state presented two theories of "physical injury" for purposes of assault, either (1) substantial pain and/or impairment of physical condition based on the injury to G's knee, or, alternatively, (2) impairment of physical condition based on "the act of the strangulation itself" (*i.e.*, the *Hendricks*'s theory). The trial court gave a concurrence instruction. It also submitted a verdict form asking the jury, if it convicted defendant on the assault count, to indicate the theory of assault on which it had concurred. The jury convicted defendant of assault, concurring on the *Hendricks*'s theory, and this appeal followed.

On appeal, defendant renews the argument he made before the trial court that the facts surrounding the strangulation adduced by the state do not meet the standard, under *Hendricks*, for either impairment of her physical condition or substantial pain, as required under the definition of physical injury. In addition, defendant argues, for the first time on appeal, that *Hendricks* was wrongly decided and should be disavowed. The state does not argue that the argument is unpreserved but responds on the merits.

Despite this, however, we have an "independent obligation to determine whether an argument advanced on appeal was preserved at trial." *Vokoun v. City of Lake Oswego*, 189 Or App 499, 508, 76 P3d 677 (2003), *rev den*, 336 Or 406 (2004) (citing *State v. Wyatt*, 331 Or 335, 344-46, 15 P3d 22 (2000)). This obligation must be satisfied even when a failure to preserve an argument has not been asserted by the opposing party. *Wyatt*, 331 Or at 346-47; *see also State v. Slight*, 301 Or App 237, 241, 456 P3d 366 (2019) (holding same).

As a general rule, claims of error that were not raised in the trial court will not be considered on appeal. *Wyatt*, 331 Or at 343. The purposes of preservation are to give "a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (citation omitted). The rule also ensures fairness to opposing parties, by requiring that "the positions of the parties are presented clearly to the initial tribunal" so that "parties are not taken by surprise, misled, or denied opportunities to meet an argument." *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995) (internal quotation marks and citation omitted).

However, principles of preservation do not dictate that parties pursue futile actions. When controlling authority is squarely on point, a party need not always compel a trial court to announce the obvious—that the court is bound by such precedent—to later challenge the reasoning of that precedent before the appellate court that announced it. As the Oregon Supreme Court noted in *State v. Bonilla*, 358 Or 475, 483, 366 P3d 331 (2015),

> "[a] preliminary issue, not raised by the parties, is whether the state's failure to advance that theory before the trial court and the Court of Appeals precludes the state from relying on it before this court as a basis for upholding the trial court's ruling on defendant's motion to suppress. We conclude that it does not. *** [I]t likely would have been futile for the state to raise a consent-based apparent authority theory before the Court of Appeals, because that court previously had held that only actual authority can satisfy the consent exception. *** As a practical matter,

the state was in a poor position to make its consent-based apparent authority argument to any Oregon tribunal other than this court, which has not directly addressed that issue."

(Internal citations omitted.)

In keeping with *Bonilla*, we will consider a litigant's challenge to existing law—one that asks us to disavow our precedent—even though that argument was not raised at trial, only when (1) raising the issue at trial would have been futile because the trial court was obligated to follow controlling precedent, and (2) the failure to alert the trial court and all parties to the challenge to controlling precedent did not result in any unfair advantage or surprise. Those criteria are met in this this case.

Here, defendant was in a poor position to advocate before the trial court that *Hendricks* was wrongly decided. We are the first court with authority to meaningfully respond to such an argument, either by affirmance, modification, or disavowal of such precedent. Finally, we can perceive no unfair disadvantage or surprise to the state by a failure to advance that argument at trial. *State v. Mailman*, 303 Or App 101, 463 P3d 20 (2020) (decided this same day and reaching a different conclusion where state was prejudiced by a failure to object at trial). Accordingly, we consider defendant's argument that *Hendricks* was wrongly decided, despite defendant raising that argument for the first time on appeal. We turn now to the merits.

ORS 163.160(1) defines assault as follows:

"A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another;

"(b) With criminal negligence causes physical injury to another by means of a deadly weapon; or

"(c) With criminal negligence causes serious physical injury to another who is a vulnerable user of a public way, * * * by means of a motor vehicle."

ORS 163.187 defines strangulation as follows:

"(1)    A person commits the crime of strangulation if the person knowingly impedes the normal breathing or circulation of the blood of another person by:

"(a)    Applying pressure on the throat, neck, or chest of the other person; or

"(b)    Blocking the nose or mouth of the other person."[2]

As defined, both assault and strangulation are Class A misdemeanors that can be elevated to a felony by the presence of certain circumstances. Those circumstances appear separately in each statute but largely mirror each other.

Because assault requires a "physical injury," we have held that ORS 163.160(1) is limited to those circumstances where "some form of external violence *** produces a harmful effect upon the body"—that is, circumstances which involve "the infliction of actual *physical injury*"—but not "[p]etty batteries not producing injury." *State v. Capwell*, 52 Or App 43, 47 n 3, 627 P2d 905 (1981) (emphasis added). ORS 161.015(7), in turn, defines "physical injury" as the "impairment of physical condition or substantial pain." Thus, evidence establishing either an impairment of a physical condition or substantial pain will support an assault conviction. *State v. Poole*, 175 Or App 258, 261, 28 P3d 643 (2001).

In *Hendricks* we interpreted "impairment of a physical condition" in the context of impeding breathing. 273 Or App at 12. There, the defendant covered the victim's face with a pillow for about a second, momentarily cutting off her breathing. *Id.* at 4. The victim pushed the defendant, but the defendant placed the pillow over her face again. *Id.* That second instance lasted for about five seconds. *Id.* According to the victim's testimony during those five seconds she felt that she could not breathe and feared that the defendant was going to kill her. *Id.*

---

[2] ORS 163.187 has been amended since defendant committed this crime. However, the amendments to ORS 163.187 do not apply to offenses committed before January 1, 2019. Because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

On appeal, the defendant in *Hendricks* argued that "[i]nterfering with a person's breathing by blocking the person's nose and mouth for one to five seconds does not, without more, constitute physical injury." *Id*. at 7 (brackets in original). We disagreed, distilling two "common and consistent" principles from our decisions on physical injury: "(1) The impairment must be material, and not merely *de minimis*; and (2) materiality is a function of a variety of case-specific circumstances, including the character, degree, and duration of the asserted impairment." *Id*. at 11-12. We further emphasized that

> "[t]he distinction between legally insufficient *de minimis* effect and actionable impairment may depend on a combination of variables. Consider, for example, the difference between a slight five-second decrease in hearing and a total five-second cessation of cardiac function. Or the difference between a moderate five-second reduction in hearing and a moderate reduction of hearing over a period of hours or days. The nature of the affected bodily function or organ, the degree of effect, and its duration may all properly bear on the assessment of legally sufficient impairment."

*Id*.

In applying those principles to the facts of *Hendricks* we specifically declined to announce a bright line rule:

> "Thus, the question reduces to whether, notwithstanding the combination of the first two considerations, the durational aspect was so brief as to preclude, as a matter of law, a reasonable juror from finding the requisite material impairment of bodily function. Obviously, completely, forcibly preventing someone from breathing for a minute would be sufficient—but for a matter of seconds? We cannot, and will not, pretend to pronounce a 'principled' distinction between one second—or three seconds—or five. However, we can, and do, hold that where, as here, the duration of complete preclusion of breathing was sufficient to cause the victim to fear for her survival, a reasonable juror could find that the duration of defendant's conduct was sufficient to have materially impaired the victim's bodily function. Accordingly, the trial court did not err in denying the [motion for judgment of acquittal], and we affirm defendant's conviction on Count 4 for fourth-degree assault."

*Id*. at 12-13.

In this case, defendant urges us to disavow *Hendricks* based, predominantly, on an argument relying on legislative history. As defendant argues, "the legislative history of ORS 163.187 demonstrates that the legislature believed that the temporary restriction of a person's breath or blood (without more) did not constitute physical injury." As an example, defendant notes the staff measure summary to House Bill (HB) 2770A—the bill that created the crime of strangulation in 2003:

> "The crime of assault requires 'physical injury.' ORS 161.015 defines 'physical injury' as impairment of physical condition or substantial pain. To meet the definition of 'physical injury' there needs to be bruises, cuts, and pain. Although strangling or suffocation can easily cause death, it is unusual to find bruises or cuts on the victim as a result of the strangulation or suffocation."

Additionally, defendant notes testimony in support of HB 2770A, such as that from Deputy District Attorney Gina Skinner:

> "Currently, there is a large hole in where the law exists to be able to prosecute these cases. * * * Primarily, the charges that are used now, sometimes is a misdemeanor assault four, which requires that we prove that the defendant caused physical injury to another person. Physical injury being the impairment of physical condition or substantial pain. * * * So, in order to go forth on physical injury, we're going to have to have some bruising or some kinds of deep cuts or some kind of testimony from the victim that there's substantial pain."

Audio Recording, House Committee on Judiciary, HB 2770A, Mar 13, 2003, at 18:04 (testimony of Deputy District Attorney Gina Skinner), https://olis.leg.state.or.us (accessed Mar 10, 2020).

The state responds that the legislative history is more uncertain than defendant presents and supports an alternative inference that the legislature understood that strangulation might be prosecutable under assault but wanted to create a new crime—one without the physical injury component—to make such prosecutions easier. For example, the state notes testimony by Representative Floyd Prozanski, the sponsor of HB 2770A:

> "When you get in front of a jury of 6 or 12 individuals, you need to actually prove the physical injury component. It's very difficult many times in these type of cases to actually get them to understand because they can't physically see the result of the injury [from strangulation] and the, for whatever reason, the statements that are made by the victim are not always as compelling as they need to be."

Audio Recording, Senate Committee on Judiciary, HB 2770A, June 12, 2003, at 26:45 (testimony of Rep Floyd Prozanski), https://olis.leg.state.or.us (accessed Mar 10, 2020).

In considering defendant's proffered legislative history, we are mindful that nothing prevents the legislature from enacting multiple statutory provisions penalizing the same act and that the enactment of a new statute on a subject does not automatically displace previous statutes governing the same conduct. *State v. Ofodrinwa*, 353 Or 507, 520, 300 P3d 154 (2013); *Messick v. Day*, 86 Or 366, 369-70, 168 P 628 (1917). Further, in general, "[t]he views legislators have of existing law may shed light on a new enactment, but it is of no weight in interpreting a law enacted by their predecessors." *DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984); *see also Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 327, 337 P3d 768 (2014) ("What later legislators thought is irrelevant to what an earlier legislature intended with an enactment[.]"). "A later legislature's interpretation of an earlier legislature's intent may be incorrect." *South Beach Marina, Inc. v. Dept. of Rev.*, 301 Or 524, 531 n 8, 724 P2d 788 (1986). Thus, "[t]he proper inquiry focuses on what the legislature intended at the time of enactment and discounts later events." *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995) (citation omitted).

Defendant contends, correctly, that the principle is not absolute, and, relying on *Ofodrinwa*, argues that sometimes later legislative enactments should be given weight in construing earlier legislative intent. 353 Or at 509. In *Ofodrinwa*, the defendant argued that the phrase "does not consent" in second-degree sexual abuse referred only to situations where the victim does not actually consent, and not where the victim only lacked capacity to consent. *Id*. The Supreme Court disagreed, concluding that "does not

consent" covered both scenarios. *Id.* In reaching that conclusion, the court looked at the legislature's 1991 amendment of the 1971 statute. *Id.* at 525. The 1991 amendment not only reclassified the degrees of sexual abuse, but also added an age-related defense. *Id.* at 528. The age-related defense provided that, where "the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age, it is a defense that the actor was less than three years older than the victim[.]" *Id.* at 525. As the court observed, "[o]nly one conclusion can be drawn" from the addition of that defense: The 1991 legislature understood the phrase "does not consent" to include incapacity to consent due to age. *Id.*

The state disputes *Ofodrinwa*'s application in this case, arguing that *Ofodrinwa* is limited to subsequent legislative revisions to the same statute, and does not support using a subsequent legislature's enactment of one statute as evidence of a past legislature's intent on another statute. We need not resolve *Ofodrinwa*'s application here, because, as we explain, even considering the legislative history surrounding the 2003 enactment of the strangulation statute, that history is not dispositive.

The parties in *Hendricks* offered no legislative history to assist us. *Hendricks*, 273 Or App at 16. In contrast, here, defendant offers considerable legislative history that, although contradictory in parts, and subject to competing inferences, can be read to support defendant's position that the Oregon Legislative Assembly enacted the strangulation statute to fill what it perceived as a "gap" in the Criminal Code that prevented the prosecution of brief strangulation under the then-existing laws, including the assault statute. The legislative history presented by defendant is not without persuasive appeal.

Our review of the legislative history of ORS 163.187 shows that it has repeatedly been modified by the legislature in an iterative process to have it match, or catch up to, the changes over time in the assault statute, lending an implication that the legislature has created two parallel statutes intended to treat different conduct in a similar manner. In our review of the various legislative hearings

over the years, we have found minimal indication that the legislature considered brief interruptions in breathing to be already penalized under the assault statute. In fact, the strangulation statute was modified in 2018, three years after *Hendricks*. Nothing in the legislative record indicates that either the legislature, or the proponents and opponents of the proposed changes to the strangulation statute, were aware of *Hendricks*.

However, even acknowledging that *some* of the legislative history surrounding the strangulation statute cuts against the holding in *Hendricks*, the question of whether we should disavow that precedent is another matter. "[T]he principle of *stare decisis* dictates that [an appellate court] should assume that its fully considered prior cases are correctly decided. Put another way, the principle of *stare decisis* means that the party seeking to change a precedent must assume responsibility for affirmatively persuading us that we should abandon that precedent." *State v. Ciancanelli*, 339 Or 282, 290, 121 P3d 613 (2005). As the Oregon Supreme Court has noted, the motivating force behind the doctrine of *stare decisis* is "'moral and intellectual, rather than arbitrary and inflexible.'" *Stranahan v. Fred Meyer, Inc.*, 331 Or 38, 54, 11 P3d 228 (2000) (internal quotation marks omitted).

While *stare decisis* draws on the same principles regardless of the source of the law at issue, the weight a court may give to *stare decisis* principles can differ. *Stare decisis* is at its zenith in the area of statutory construction. As the Oregon Supreme Court has cautioned,

> "[t]hat does not mean that we perceive no difference between our task in interpreting a statute and our task in interpreting a constitutional provision or a rule of common law. *** Our responsibility in statutory interpretation is to 'pursue the intention of the legislature, if possible.' ORS 174.020(1)(a). After we have interpreted a statute, the legislature's constitutional role allows it to make any change or adjustment in the statutory scheme that it deems appropriate, given this court's construction of the statute (and, of course, subject to constitutional limitations). The legislature can—and often does—amend a statute that this court has interpreted to clarify or change the statute or

otherwise to advance the policy objectives that the legislature favors.”

*Farmers Ins. Co. v. Mowry*, 350 Or 686, 697, 261 P3d 1 (2011). That weight is especially strong when the statutory interpretation at issue comes from an intermediate appellate court. In such instances, there is not one, but *two*, bodies capable of correction—the legislature, and the Supreme Court.

We will overrule prior statutory interpretation only in extraordinary circumstances—when such prior interpretation was plainly erroneous. “Such revisiting of statutory construction precedent, while necessarily quite rare, usually occurs when our precedent cannot be reconciled with the result that would follow application of a prescribed (or subsequently prescribed) mode of analysis or when we are presented with a qualitatively new, potentially dispositive contention not previously raised and addressed.” *State v. Civil*, 283 Or App 395, 416, 388 P3d 1185 (2017) (citation omitted).

Here, we are not persuaded that *Hendricks* was erroneous, let alone plainly erroneous. Even assuming we could consider the legislative history presented by defendant under *Ofodrinwa*, a point we do not decide, that history would not be dispositive. It is subject to multiple competing interpretations and does not conclusively and definitively establish a legislative intent at odds with *Hendricks*. Accordingly, we decline to revisit *Hendricks*, and proceed to its application in this case.[3]

Here, based on the state’s proffered evidence, defendant grabbed G by the throat and exerted sufficient force to cause her to be unable to breathe. And although the duration of that encounter was described as “very fast,” the intensity of the encounter was sufficiently severe that officers on the scene later observed redness with “thumb kind of imprints” on G’s neck, and the next day G’s neck was observed to be

---

[3] We note, however, that defendant’s arguments here, and in particular the compilation of extensive legislative history previously unpresented to us, represents precisely the type of “marshalling” of history, law and arguments “for, and against, the precedent” that we expect of a litigant who is asking us to revisit precedent. *Larsen v. Nooth*, 292 Or App 524, 536, 425 P3d 484 (2018), *rev den*, 364 Or 749 (2019) (James, J., concurring).

slightly puffy and red. The "physical injury" component of assault under ORS 163.160 is assessed under the totality of the circumstances to determine if the impairment is material and not *de minimis*. "Materiality is a function of a variety of case-specific circumstances, including the character, degree, and duration of the asserted impairment." *Hendricks*, 273 Or App at 11. Defendant's focus on appeal solely on the durational aspect does not encompass the whole picture. Strangulation may give rise to "physical injury" that is material through evidence of duration, *or other character or degree*. Although the testimony here was that the duration was "very fast," in the light most favorable to the state, evidence of marks visible for some significant period after the incident is sufficient for a rational trier of fact to conclude that a material, non-*de minimis*, physical injury occurred.

Finally, we turn to defendant's second assignment of error. There, he argues that, if *Hendricks* controls, then the guilty verdict for strangulation must merge into a guilty verdict for assault. We disagree.

ORS 161.067(1) provides:

> "When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

This provision of the antimerger statute applies to multiple statutory convictions, one of which is "subsumed" under another, akin to a lesser included offense. ORS 161.067(1) is Oregon's statutory codification of the federal test developed in *Blockburger v. United States*, 284 US 299, 304, 52 S Ct 180, 76 L Ed 306 (1932), which held that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Citation omitted.) *See also State v. White*, 346 Or 275, 298 n 5, 211 P3d 248 (2009) (Kistler, J., concurring) (concluding, based on the legislative history of *former* ORS 161.062(1) (1985), *repealed by* Or Laws 1999, ch 136, § 1, that ORS 161.067(1) codifies the *Blockburger* test).

When considering issues of merger under ORS 161.067(1) a court looks to the statutory elements, not to the factual circumstances recited in the indictment. *State v. Atkinson*, 98 Or App 48, 50, 777 P2d 1010 (1989). However, when a statute contains alternative forms for commission of a single crime, we look to the indictment to determine which form the state has charged and compare the elements actually pleaded. *State v. Gray*, 240 Or App 599, 609 n 4, 249 P3d 544 (2011). This includes comparing the mental states actually pleaded. *See, e.g.*, *Hendricks*, 273 Or App at 14 (looking to the mental states "as pleaded").

In *Hendricks* the state had pleaded the assault charge in the full terms of the statute, including all three potential mental states of intentional, knowing, or reckless conduct. In contrast, the state pleaded the count of strangulation in the only manner provided by statute, with a mental state of knowing. As such, we noted that, "[t]he two offenses have different requisite culpable mental states—and a crime that requires proof of a knowing mental state cannot be the 'lesser-included' of a crime with a reckless mental state." *Hendricks*, 273 Or App at 14-15.

Here, despite the assault statute providing three alternative mental states, the state pleaded assault under a single mental state, *i.e.*, knowing. That, in turn, corresponds to the mental state of strangulation. Thus, the mental state basis for antimerger articulated in *Hendricks* is inapplicable here, based on the pleadings. However, *Hendricks* did not preclude merger based *solely* on mental state, but also upon the nature of the acts. As we said, and now reiterate:

> "[T]he elements of strangulation, which require proof of engaging in a specific means (applying pressure on the throat or neck or blocking the nose or mouth) toward a specific end (impeding normal breathing or circulation), require different proof than the elements of fourth-degree assault, the elements of which contemplate a vast array of actions resulting, either directly or indirectly, in physical injuries."

*Hendricks*, 273 Or App at 15.

As the Oregon Supreme Court explained in *State v. Tucker*, 315 Or 321, 331, 845 P2d 904 (1993), the "conditions

[requiring separate punishable offenses under *former* ORS 161.062 (1985)] are not met where one offense charged truly is a lesser included offense of another offense charged, that is, when the former has no elements not also present in the latter, even though the latter has additional elements not present in the former." (Citation omitted.) Said another way, for purposes of merger under ORS 161.067(1), a greater offense renders another offense a "lesser included" and subsumes it only where—focusing on the elements alleged in the indictment, not the facts underlying them—there is no way to have proven the elements of the greater offense, without *also and necessarily*, proving all the elements of the lesser offense. *Accord Martinez v. Cain*, 366 Or 136, 146, 458 P3d 670 (2020) ("In short, the requirement is met, and the offenses will not merge, only if each statutory offense at issue has a unique element not in common with the other offenses.").

Here, one can cause physical injury under the assault statute through impairment of a condition—breathing—in an unspecified, and unlimited number of ways. As an example, one could envision the act of waterboarding, or, alternatively, locking a person in a vacuum chamber, as qualifying as an impairment of a physical condition that is more than *de minimis*, as required under *Hendricks*. However, it is far from certain that either situation would meet the definition of strangulation under ORS 163.187, which is limited to impeding breathing through specifically enumerated acts such as "[a]pplying pressure on the throat, neck, or chest" or "[b]locking the nose or mouth of the other person."

In reality, facts underlying most assaults that involved the blockage of airflow will also constitute strangulation under ORS 163.187. But for merger, we do not look to the facts underlying the charges, but the statutory elements charged. It is a comparison made in the abstract, not in the factual realities of the case at hand. In short, because it is possible to prove the elements of assault, *without also and necessarily* proving all the elements of strangulation, the two do not merge, and the trial court did not err.

Affirmed.