Argued and submitted March 22, reversed November 7, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SAMANTHA IRENE WRIGHT,
*Defendant-Appellant.*

Tillamook County Circuit Court
071270; A142417

290 P3d 824

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jennifer Lloyd, Attorney-in-Charge, Criminal Appeals, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Shannon T. Reel, Assistant Attorney General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

In this criminal appeal, defendant challenges her conviction for first-degree criminal mistreatment, ORS 163.205, for spanking a 16-month-old child and leaving a bruise on the child's buttock. Defendant assigns error to the trial court's denial of her motion for a judgment of acquittal, arguing that there was no proof that she caused "physical injury" to the victim, an element of first-degree criminal mistreatment. Because we agree with defendant, we reverse.

The facts are undisputed. Defendant admitted to spanking a 16-month-old child, while she babysat him. The baby cried when she spanked him. The child's mother picked up the child later that evening and testified that the child looked tired and "his eyes were all red." Later, when the mother's boyfriend, Coats, was changing the child's diaper, he noticed black and purple bruising extending from the top of his diaper to the bottom of his left buttock. The next day, the mother took the child to a doctor, and Coats called the police. Dr. Betlinski examined the child and described the bruising as "superficial ecchymosis."[1] He explained that "ecchymosis" is a medical term for bruising and that it can occur at different levels ranging from just under the skin to deep in the muscle. He also explained that, in this context, "superficial" means just under the skin and is the least severe type of bruise. In his opinion, a relatively flat object, possibly a hand, caused the bruising. He also testified that the bruise on the child was caused by "a fairly sharp shock to the skin that then gets small capillary blood vessels to suddenly pop and leak out their blood." During the examination, Betlinski noted that the child was very active and had excellent range of motion in all of his joints and that he did not exhibit any evidence of pain. Later that evening, Detective Kettner visited the child and the mother. He took photographs of the child's bruise, which he described as a purple and brown bruise above the child's left buttocks and running down to the child's upper leg. Kettner testified that the child was so full of energy that he ran around the house making it

---

[1] An "ecchymosis" is a "purplish patch caused by extravasation of blood into the skin, differing from petechiae only in size (larger than 3 mm diameter)." *Stedman's Medical Dictionary* 561 (27th ed 2000).

difficult to get a hold of the child to take photographs of the bruise.

Defendant was arrested and charged with first-degree criminal mistreatment. At trial, the child's mother, Betlinski, and Kettner testified to the facts above. At the close of the state's case, defendant moved for a judgment of acquittal, arguing that the evidence was insufficient to prove "physical injury" as required for a conviction of first-degree criminal mistreatment. ORS 163.205(1)(b)(A).[2] "Physical injury" is defined as "impairment of physical condition or substantial pain." ORS 161.015(7). The trial court ruled that the prosecution had failed to adduce circumstantial evidence of substantial pain, but denied the motion because there was sufficient evidence of impairment of the child's physical condition to submit the case to the jury. The jury ultimately convicted defendant of first-degree criminal mistreatment.

On appeal, defendant contends that there was no evidence that the child suffered from an impairment of his physical condition to support the trial court's denial of her motion for a judgment of acquittal. In reviewing a motion for a judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational factfinder could find that the state proved each element of the offense beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998).

"Impairment of physical condition" means "harm to the body that results in a reduction in one's ability to use the body or a bodily organ for less than a protracted period of time." *State v. Higgins*, 165 Or App 442, 446-47, 998 P2d 222 (2000). As we clarified in *State v. Hart*, 222 Or App 285, 291,

---

[2] ORS 163.205 provides, in part:

"(1) A person commits the crime of criminal mistreatment in the first degree if:

"* * * * *

"(b) The person, in violation of a legal duty to provide care for a dependent person or elderly person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person or elderly person, intentionally or knowingly:

"(A) Causes physical injury or injuries to the dependent person or elderly person[.]"

193 P3d 42 (2008), impairment of physical condition "should be understood to include not only impairment of voluntary use of a body part, but also of the ordinary *function* of a body part." (Emphasis in original.) Our case law explains that, absent a diminishment in the ability to use a body part or disruption of the ordinary function of an organ, there is no impairment of physical condition.

In *Higgins*, the defendant slapped, shook, and scratched the victim, leaving four to six red scrape marks on the victim's neck and arm. 165 Or App at 444. There was no bleeding, and the victim did not require medical attention. *Id*. We held that, because there was no evidence that the victim's scratches reduced his ability to use his body or other bodily organ, there was no impairment of the victim's physical condition. *Id*. at 448.

Likewise, in *State v. Rice*, 48 Or App 115, 117, 616 P2d 538, *rev den*, 289 Or 741 (1980), the defendant broke the rear window of a car, causing flying glass to cut the victim's cheek. The victim did not realize that she had been cut, she felt no pain, and the cut was not noticeable after two or three days. The cut left no scar, and the victim did not receive medical attention. We held that the victim's scratch was so slight that it did not constitute impairment of physical condition. *Id*. at 118.

In contrast to *Higgins* and *Rice,* in cases where there is evidence that the injury reduces the victim's ability to use any bodily organ, we have concluded that the victim has suffered an impairment of physical condition. In *State v. Cetto*, 66 Or App 337, 674 P2d 66, *rev den*, 296 Or 712 (1984), we upheld the defendant's assault conviction because there was evidence that the victim sustained not only a bruise on his face, but also a swollen and bloody lip when the defendant slapped him. We reaffirmed that conclusion in *Higgins*, explaining that the *swollen lip* impaired the ordinary function of the victim's body part, the lips. *Cetto*, 165 Or App at 448.

In *Hart*, we emphasized that the injury must diminish the body or bodily organ from functioning properly.

222 Or App at 291. In that case, we held that a reasonable factfinder could reasonably find impairment of a physical condition from the victim's half-inch gash on the back of his head, because the gash disrupted the skin's function to protect the inner body from infection. 222 Or App at 291-92. Likewise, in *State v. Jones*, 229 Or App 734, 738, 212 P3d 1292, *rev den*, 347 Or 446 (2009), we held that the jury could infer from the evidence of a "heavy scrape" about one and one-half inches wide and four inches long that the wound could disrupt the ordinary function of the skin.

In light of the case law, there is no evidence in this case that the child's bruise impaired the voluntary use of a body part or disrupted any bodily organ from functioning properly. Defendant admitted to spanking the child at least three times on his left buttock, leaving a sizable bruise. The state did not present evidence that the bruise impaired the child's voluntary use of a body part. In fact, there was evidence that the child had full mobility. Betlinski testified that, when he examined the child the next day, the child had excellent range of motion in all of his joints and did not exhibit any evidence of pain. Kettner, who investigated the case, also testified that the child was so full of energy that he ran around the house making it difficult for Kettner to take photographs of the child's injury. There was no evidence that the child felt pain when he sat down on his left buttock or that he favored his right side when lying down. Therefore, we conclude in this case that, where the bruising did not diminish the child's bodily movement or ability to engage in everyday activities, there was insufficient evidence that defendant impaired the child's physical condition. *Cf. State v. Glazier*, 253 Or App 109, 113, 288 P3d 1007 (2012) (evidence of pain arising from the bruised areas on the victim's ribs and legs that made it more difficult for her to engage in normal activities such as walking up and down stairs and lifting small objects is sufficient to support the inference that injuries caused impairment of a physical condition).

The state counters that it presented evidence that the spanking caused "small capillary blood vessels to suddenly pop and leak out their blood, which is then what is the actual bruising." The state concludes that "a rational trier of fact could infer that 'popped' blood vessels that

leak blood constitute impairment of the child's skin[.]"[3] We disagree. Unlike in *Hart* and *Jones,* where we held that a gash and a scrape disrupted the skin's ordinary function to prevent infection, in this case, there was no evidence that the bruising affected the skin's ordinary function. Indisputably, the skin did not break, which is evidence from which a jury can infer impairment of the skin's ability to ward off infection. *See Hart*, 222 Or App at 291-92 ("one of the functions of the skin is to protect the inner body from infection," and a factfinder could infer that a half-inch gash disrupts that function). Moreover, although Betlinski testified that the bruising occurred when blood vessels popped and leaked blood just below the skin's surface, he did not say whether that disrupted the skin's function or any other organ's function. Despite our view of the facts in the state's favor, there was no evidence to support a determination that the bruise was an impairment of the victim's physical condition and, consequently, a "physical injury" for purposes of the criminal mistreatment statute. Accordingly, the trial court erred in denying defendant's motion for judgment of acquittal.

Reversed.

---

[3] The state also argues that a rational trier of fact could infer that the child suffered substantial pain during the spanking because the child appeared very tired and had red eyes, possibly from crying, when mother picked him up from defendant's home. We decline to address that argument because the trial court ruled that there was no evidence of substantial pain, allowing only the "impaired physical condition" theory to go to the jury. *See Hart*, 222 Or App at 288 (similarly declining to address the argument that the record contained evidence that the victim suffered substantial pain when the trial court found otherwise).