Argued and submitted December 4, 2020; conviction on Count 1 reversed, remanded for resentencing, otherwise affirmed February 16, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MELISSA YERTON,
*Defendant-Appellant.*

Washington County Circuit Court
18CR54538; A171842

505 P3d 428

Defendant placed her hands on her son's neck, leaving visible marks. For that conduct, she was convicted in a bench trial of first-degree criminal mistreatment (Count 1), ORS 163.205, and strangulation (Count 2), ORS 163.187. On appeal, she assigns error to the denial of her motion for judgment of acquittal on Count 1, contending that there is insufficient evidence to permit a finding that she caused "physical injury" to her son within the meaning of ORS 163.205. *Held*: The record in this case would require guesswork to conclude that defendant's act of putting her hands around her son's throat had the effect of impeding his ability to breathe for even a brief period of time, amounting to physical injury under ORS 163.205.

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.

Theodore E. Sims, Judge.

George W. Kelly argued the cause and filed the brief for appellant.

Kirsten M. Naito, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Lagesen, Chief Judge, and Aoyagi, Judge.*

LAGESEN, C. J.

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.

_____

* Lagesen, C. J., *vice* Armstrong, S. J.

**LAGESEN, C. J.**

Angry at her 11-year-old son, J, defendant placed her hands on his neck, leaving visible marks. For that conduct, she was convicted in a bench trial of first-degree criminal mistreatment (Count 1), ORS 163.205, and strangulation (Count 2), ORS 163.187. On appeal, she assigns error to the denial of her motion for judgment of acquittal on Count 1, contending that there is insufficient evidence to permit a finding that she caused "physical injury" to her son within the meaning of ORS 163.205. We agree and, therefore, reverse defendant's conviction on Count 1.

We review a trial court's denial of a motion for a judgment of acquittal for legal error, and we consider the facts in the light most favorable to the state and draw all reasonable inferences in the state's favor. *State v. Dillard*, 312 Or App 27, 28, 490 P3d 176 (2021). The question is whether the evidence is sufficient to permit a rational fact-finder to find all the elements of the charged crime beyond a reasonable doubt. *State v. Casey*, 346 Or 54, 56, 58, 203 P3d 202 (2009). We state the facts underlying defendant's conviction in accordance with our standard of review.

In May 2018, J's teacher observed scratches and bruises on J's neck at school and reported the injury to the Department of Human Services (DHS). When a detective met with J the next day to investigate the teacher's concerns, he noticed an "abrasion on his neck." In response to the detective's question whether defendant caused the bruising, J "became very quiet, sank his head down," and admitted that defendant had caused the bruising. J reported that defendant injured him when she woke him up by tickling him. The detective was skeptical of that version of events because J's injury "appeared to be from *** blood vessels being popped underneath the skin due to pressure." The detective then interviewed defendant, who told him that the incident had occurred two days prior.

That same day, J underwent a medical and forensic interview. In that interview, J gave an account different from what he had told the detective. J stated that his mother accidentally scratched him with her nail because she was angry that he would not clean his room. He told the

examiner that he "didn't even feel it and it doesn't hurt." He showed how defendant put her hand on his neck. When asked how his breathing was affected, he demonstrated by breathing heavily, saying that he breathed like that because he "was scared." When the examiner asked about his inconsistent stories about how he got the mark on his neck, J replied, "I didn't want my mom getting in trouble where— ah, where I had to go to foster care."

The doctor who conducted the medical examination also documented J's injuries. He determined that the marks on J's neck were "petechial bruises" because blood vessels burst and formed a "constellation of bruising," and that the bruising was a result of force from hands grabbing J's neck. When the doctor palpated the bruising and asked J if there was pain, J said no.

The state charged defendant with one count of first-degree criminal mistreatment, and one count of strangulation. Defendant elected to waive her right to a jury trial, and the case was tried to the court. On the charge of criminal mistreatment, the state's theory was that defendant caused "physical injury" to J within the meaning of ORS 163.205 by impeding his ability to breathe.

At trial, J testified that the defendant accidently scratched him and demonstrated in court that she had her "index finger and thumb on each side of [his] throat." The detective who initially investigated J's injury, the doctor who examined him, and the examiner who interviewed J recounted J's statements to them and the results of J's physical examination.

J's father also testified. On direct examination, he stated that J had reported to him that defendant "put her hands around [the child's] throat and choked him because he would not clean his room." On cross-examination, however, J's father clarified that J had not described defendant as choking him, stating that J "didn't use the word choke." Rather, J had said that defendant had "squeezed [his] neck" and that J "couldn't breathe." At that point, defendant raised a hearsay objection to the statements that defendant had squeezed J's neck and that J could not breathe, and the trial court sustained the objection. (On appeal, the parties

dispute whether the trial court excluded both the statement about defendant squeezing J's neck and the statement that J could not breathe. We think it clear from the transcript that the trial court excluded both statements.)

After the state rested, defendant moved for a judgment of acquittal on the charge of first-degree criminal mistreatment on the grounds that the evidence was insufficient for "a rational finder of fact [to] find beyond all reasonable doubt that she impaired [the child's] physical condition." The trial court denied the motion. At the conclusion of trial, the court found defendant guilty as charged on both counts. On the charge of criminal mistreatment, the court found that defendant caused the physical injury to the child by "applying force to rupture subsurface blood vessels," and that the state "proved beyond a reasonable doubt that there was a physical injury" because "[the child] couldn't breathe properly while his mother's hand was around his—his throat." Defendant appealed.

On appeal, the issue before us, as framed by the parties' arguments, is narrow: whether the evidence is legally sufficient to support a finding that defendant caused physical injury to J within the meaning of ORS 163.205 by impairing his breathing, as the trial court found. A person commits first-degree criminal mistreatment in violation of ORS 163.205(1)(b), by violating "a legal duty to provide care for a dependent person or elderly person, *** [by] intentionally or knowingly *** [c]aus[ing] physical injury or injuries to the dependent person or elderly person." ORS 161.015(7) then defines "physical injury" as "impairment of physical condition or substantial pain." In this case, the parties agree that there is not sufficient evidence to find that defendant caused J to suffer substantial pain within the meaning of ORS 161.015(7). As a result, the only question is whether the evidence admitted at trial allows for the reasonable inference that defendant caused J to suffer an "impairment of physical condition." We conclude that, under our case law, the answer is no.

In *State v. Higgins*, 165 Or App 442, 446-47, 998 P2d 222 (2000), we construed "impairment of physical condition" to mean "harm to the body that results in a reduction

in one's ability to use the body or a bodily organ for less than a protracted period of time." In *State v. Hendricks*, 273 Or App 1, 11, 359 P3d 294 (2015), *rev den*, 358 Or 794 (2016), we clarified that, to be a qualifying impairment, "(1) The impairment must be material, and not merely *de minimis*; and (2) materiality is a function of a variety of case-specific circumstances, including the character, degree, and duration of the asserted impairment."

Applying that standard, we have concluded that a swollen and bloody lip with facial bruises impairs the use of a body part, the mouth, resulting in a qualifying impairment. *Higgins*, 165 Or App at 448. Similarly, we have concluded that swelling around the eye qualified when it impaired the use of the victim's eye. *Id*. However, a cut on the face that caused no pain and was "not noticeable after two or three days" did not meet the standard, nor did an assault that left no bruises or other evidence of injury, because of the absence of evidence that the victim's ability to use his body was reduced. *Id*. at 447-48.

Following *Higgins*, we have concluded that a large cut or heavy scrape is a qualifying impairment because such an injury disrupts the skin's function of keeping infection out of the body. *State v. Hart*, 222 Or App 285, 291, 193 P3d 42 (2008); *State v. Jones*, 229 Or App 734, 738, 212 P3d 1292, *rev den*, 347 Or 446 (2009). We have concluded that preventing a person from breathing for up to five seconds is a qualifying impairment. *Hendricks*, 273 Or App at 12. We have also concluded that evidence of a brief reduction in the ability to breathe, combined with evidence that the victim's neck was puffy and red the next day was sufficient to allow a finding of impairment. *State v. Merrill*, 303 Or App 107, 120-21, 463 P3d 540 (2020), *adh'd to as modified on recons*, 309 Or App 68, 481 P3d 441, *rev den*, 368 Or 402 (2021). In contrast, evidence of bruises from a spanking was insufficient to allow for a finding of impairment. *State v. Wright*, 253 Or App 401, 406, 290 P3d 824 (2012).

*Merrill* and *Wright* appear to be the most comparable cases to the present one. In *Merrill*, we concluded that evidence was sufficient to show a reduction in the victim's ability to breathe where it demonstrated that the defendant

completely prevented the victim from being able to breathe for a brief period, and also left marks that were visible for some time. We explained that evidence that the victim was prevented from breathing, together with "evidence of marks visible for some significant period after the incident is sufficient for a rational trier of fact to conclude that a material, non-*de minimis*, physical injury occurred." *Merrill*, 303 Or App at 121. In *Wright*, we concluded that bruises resulting from a spanking were inadequate to support a finding of impairment, where "the skin did not break, which is evidence from which a jury can infer impairment of the skin's ability to ward off infection[.]" 253 Or App at 406. Accordingly, we concluded that "small capillary blood vessels [ ] suddenly pop[ping] and leak[ing] out their blood," *i.e.*, bruising, does not rise to the level of disrupting the skin's or any other bodily organ's function, and thus the bruising in that case did not constitute impairment of a physical condition. *Id.* at 405-06.

In this case, the evidence of impairment is more in line with what we deemed insufficient in *Wright* than it is with the evidence that we deemed sufficient in *Merrill*. The evidence of impairment of physical condition in this case includes the following: (1) bruising that was visible two days after the incident; (2) J's statement and demonstration that he was breathing fast during the incident, saying that he breathed like that because he "was scared"; (3) J's multiple statements that he experienced no pain; (4) the doctor's testimony that the bruising was consistent with the force of a hand applied to the child's neck; and (5) J's father's later-qualified testimony that J reported defendant had put her hands around his neck and choked him. Under *Wright*, the evidence of the marks alone does not allow for a reasonable finding of impairment. Further, what is missing from that evidence, and what makes this case unlike *Merrill*, is the absence of evidence that defendant's conduct *reduced* J's ability to breathe. Although J's testimony that he breathed faster would allow the inference that defendant's conduct *affected* his breathing, it does not allow for the reasonable inference that his ability to breathe was reduced.

Beyond that, there is no evidence to allow for the inference that pressure strong enough to leave marks on

someone's neck is pressure that is likely to impede the ability to breathe as well. The only direct evidence that defendant's conduct prevented J from breathing—J's father's testimony that J had told him he could not breathe—was excluded as hearsay and, for that reason, cannot be used to sustain the verdict. To the extent that J's father's subsequently qualified testimony that J reported that defendant had put her hands around his neck and "choked" him bears on the question, without some additional indication about how defendant's conduct affected his breathing, it does not allow the inference that J's breathing was impaired because, on this record, it is speculative whether J was describing defendant's conduct—what she was doing with her hands around his neck—or describing the effect of that conduct on his own breathing. In other words, on the particular record in this case, it requires guesswork to conclude that defendant's act of putting her hands around J's throat had the effect of impeding his ability to breathe for even a brief period of time.

Taking a slightly different approach, the state points out that it is undisputed that the evidence is sufficient to support defendant's conviction for strangulation and appears to argue that both *Hendricks* and *Merrill* stand for the proposition that, as a matter of law, evidence sufficient to establish strangulation is sufficient to establish physical injury for purposes of ORS 163.205(1)(b)(A). That argument, to the extent the state is making it, rests on a misapprehension of those cases. In both cases, we explained that evidence sufficient to support a conviction for strangulation may *not* always demonstrate any impairment of physical function or other form of physical injury. We explained that strangulation requires evidence that a defendant "engag[ed] in a specific means (applying pressure on the throat or neck or blocking the nose or mouth) toward a specific end (impeding normal breathing or circulation)"; that is, proof that the defendant intended to impede breathing or air circulation, even if the defendant did not achieve impairment, is sufficient. *Hendricks*, 273 Or App at 15. The element of physical injury, on the other hand, requires evidence of a particular *result*, for example, impairment of bodily function. *Id.* Consequently, "[s]trangulation *may* give rise to 'physical

injury,'" but does not necessarily result in it in every case. *Merrill*, 303 Or App at 121 (emphasis added). For that reason, to the extent the state's argument hinges on the mere fact that defendant was convicted of strangulation, it fails.

For those reasons, we conclude that the evidence is insufficient to support a finding that defendant's conduct impaired J's breathing and, for that reason, insufficient to support the physical injury element of the crime of first-degree criminal mistreatment. We therefore reverse defendant's conviction on Count 1.

Conviction on Count 1 reversed; remanded for resentencing; otherwise affirmed.