No. 261 April 24, 2024 203

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAMES KORD STANIFORD,
*Defendant-Appellant.*

Polk County Circuit Court
21CR41693; A178982

Rafael A. Caso, Judge.

Submitted February 7, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Brett J. Allin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kirsten M. Naito, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Remanded for resentencing; otherwise affirmed.

Aoyagi, P. J., dissenting.

## JOYCE, J.

Defendant appeals from a judgment of conviction for fourth-degree assault constituting domestic violence, ORS 163.160(3), and attempted second-degree kidnapping, ORS 161.405(2)(c). On appeal, he raises six assignments of error. The first three claims of error relate to the denial of his motions for judgment of acquittal on the assault and kidnapping charges and entry of conviction for attempted second-degree kidnapping. His fourth, fifth, and sixth claims of error each involve challenges to his sentence. We affirm the trial court's denial of defendant's motions for judgment of acquittal on the two charges and entry of conviction for attempted second-degree kidnapping. The state concedes, and we agree, that the trial court erred in imposing a post-prison supervision (PPS) term that exceeded the statutory maximum. That error, which forms the basis for defendant's sixth assignment of error, obviates the need for us to address his fourth and fifth claims of error. Accordingly, we remand for resentencing and otherwise affirm.

### SUFFICIENCY OF THE EVIDENCE

At his trial, defendant moved for a judgment of acquittal on the assault and kidnapping charges. As to assault, he argued that the state failed to show that the victim suffered a "physical injury." *See* ORS 163.160(1)(a) (a person commits the crime of fourth-degree assault if the person causes "physical injury" to another). As to the attempted kidnapping, he argued that the state failed to show that defendant intended to substantially interfere with the victim's personal liberty and that he moved the victim from one place to another. *See* ORS 163.225(1)(a) (a person commits second-degree kidnapping if they take another person from one place to another with the intent to substantially interfere with that person's liberty).

In an appeal from the denial of a motion for judgment of acquittal, we review the facts in the light most favorable to the state and draw all reasonable inferences in the state's favor to determine "whether any rational trier of fact, accepting reasonable inferences and making reasonable credibility choices, could have found the essential elements

of the crime beyond a reasonable doubt." *State v. Lupoli*, 348 Or 346, 366, 234 P3d 117 (2010). We thus state the relevant facts consistent with that standard of review.

Defendant is the son of the victim, K, and lived with K and defendant's mother, Martha. While K and Martha were talking in the living room of their home, defendant came in and told K not to talk to Martha. He then pushed K down into a chair. K got up and walked into the dining room, where defendant again pushed K down into another chair. Defendant then pushed on K's chest and hit him on the side of the face. That strike also hit K's ear, which began bleeding. K wore a hearing aid in that ear and the hearing aid came out. K got up again, and defendant grabbed him around his chest and "squeez[ed]." K then left the house.

K walked towards his neighbor's house, which is about 75 feet from his home. He called out to his neighbor, Coville, for help, and walked up to the gate in front of her home. Coville then saw defendant come up behind K and "put his arm around" K's chest or shoulder and "pull[] him back." She went inside her home to get her phone. A second neighbor then saw defendant and K standing in their (defendant and K's) front yard, where defendant was "hovering over" K, with his arms over K's arms. In describing defendant's behavior, the second neighbor stated that "it looked like a tactic to get someone, you know, kind of into a house or, you know, away from their point." That neighbor did not see defendant and K move. When Coville came back outside after retrieving her phone, defendant was gone and K was coming back to her home.

Once in Coville's house, K had blood coming from "around his ears" and he had a red mark on the side of his face that was "a little bloody." K also had blood on his shirt. A responding officer saw blood on K's right ear and red lines and swelling "about the size of a quarter" on K's jaw. Martha cleaned up the blood that was on his face with a washcloth.

The state charged defendant with a number of offenses. As noted above, defendant moved for a judgment of acquittal on the assault and kidnapping charges, arguing that the state had failed to offer evidence sufficient to

establish the elements of those offenses. The trial court denied the motions.[1]

On appeal, defendant renews his arguments that the evidence was insufficient to establish the elements of assault and kidnapping and defendant further argues that the evidence was insufficient for the trial court to find him guilty of attempted second-degree kidnapping. Thus, defendant claims that the trial court erred in denying his motions for a judgment of acquittal on the assault and kidnapping charges and additionally erred in convicting him of attempted second-degree kidnapping.

We begin with the motion for judgment of acquittal on fourth-degree assault. The state had to prove that defendant caused physical injury to K. ORS 163.160(1)(a). "Physical injury" is defined, in relevant part, as "impairment of physical condition." ORS 161.015(7). An "impairment of physical condition means harm to the body that results in a reduction in one's ability to use the body or a bodily organ for less than a protracted period of time," *State v. Higgins*, 165 Or App 442, 446-47, 998 P2d 222 (2000), and can include impairment of the "ordinary function of a body part." *State v. Hart*, 222 Or App 285, 291, 193 P3d 42 (2008) (emphasis omitted).

We have held that a half-inch bleeding cut on the back of the head constitutes impairment of physical condition, because a rational trier of fact could find that the cut disrupted one of the skin's functions, which is to protect the "inner body from infection." *Hart*, 222 Or App at 291-92. Similarly, we have found that a "heavy scrape" also disrupted the skin's ordinary function and thus constituted impairment of physical condition. *State v. Jones*, 229 Or App 734, 738-39, 212 P3d 1292, *rev den*, 347 Or 446 (2009). In contrast, a slight cut or scrape that did not bleed, went unnoticed by the victim, and did not cause the victim pain

_____

[1] Although the trial court denied the motions for judgment of acquittal on both charges, at the end of the bench trial, the court concluded that defendant was not guilty of the completed crime of second-degree kidnapping and convicted him of attempted second-degree kidnapping, based on its conclusion that the state had not proved that defendant had moved K from one place to another. Defendant assigns error to both the denial of the motions for judgment of acquittal and the entry of the conviction for the attempted crime.

are not sufficient evidence of impairment of physical condition. *Higgins*, 165 Or App at 447; *State v. Rice*, 48 Or App 115, 117-18, 616 P2d 538, *rev den*, 289 Or 741 (1980).

Here, several people observed K's ear bleeding and apparently enough so as to reach his shirt. He also had swelling around his ear and jaw. Although, as defendant notes, no one testified about the size of any wound, a rational trier of fact could conclude that, given that his ear was bleeding and he had swelling in that same area, K was bleeding from some sort of cut or wound and that he suffered impairment of physical condition as a result. Although K did not receive medical treatment from a doctor, he did receive treatment from his wife, who wiped off the blood. This is thus not a case like *Higgins* or *Rice* where the person did not notice that they had been injured, required no treatment, and the injury did not bleed.

Next, we turn to the sufficiency of the evidence for attempted second-degree kidnapping. As relevant here, the state had to prove that defendant took a substantial step towards taking K "from one place to another" (the asportation element) with the intent to "interfere substantially with another's personal liberty" (the intent element). ORS 163.225(1). Based on the neighbors' testimony, a rational trier of fact could conclude that defendant took a substantial step towards moving K from one place to another: one neighbor saw defendant by the gate in her yard with his arm wrapped around K and, soon after, a second neighbor saw defendant and K in K's yard, and it looked like defendant had K embraced in such a way as to pull him back towards and into the house. Given the distance between the neighbor's gate and K's yard, sufficient evidence supports the inference that defendant took a substantial step towards moving K from one place to another. *See State v. Anderson*, 329 Or App 754, 758, 542 P3d 449 (2023) (noting that "relatively minimal movement" is sufficient).

The same is true of the evidence that defendant intended to substantially interfere with K's liberty. As we recently observed in *Anderson*, where the defendant moved the victim out of a house and into a yard, "the defendant must intend that the interference be something more than

movement that is merely incidental to another crime," *e.g.*, "not as an unintended consequence of an assault that became mobile." *Id.* at 759-60. Here, two witnesses saw defendant put his arms around K's chest or shoulder, pull him back in such a way so as to try and get someone into a house, and defendant was moved from the neighbor's gate (where Coville saw him) back into his own yard (where the second witness saw him). Given these circumstances, the evidence was sufficient to give rise to an inference of defendant's intent to interfere substantially with K's liberty to move freely by attempting to move him back into the house, a place of confinement. *State v. Wolleat*, 338 Or 469, 475, 111 P3d 1131 (2005) (recognizing that one way of proving intent to substantially interfere with a victim's personal liberty is evidence of an intent to confine a victim); *see also Anderson*, 329 Or at 760 (same).

In sum, the trial court did not err in denying defendant's motions for a judgment of acquittal on the assault and kidnapping charges and also did not err in entering a conviction for attempted second-degree kidnapping.

## POST-PRISON SUPERVISION TERM

The trial court sentenced defendant to 25 months of prison and imposed a three-year post-prison supervision (PPS) term on the attempted second-degree kidnapping conviction. OAR 213-005-0002(4) prohibits a PPS term that, when added to the prison term, exceeds the "statutory maximum indeterminate sentence for the crime of conviction." The statutory maximum indeterminate sentence for a Class C felony, of which attempted second-degree kidnapping is, is 60 months. ORS 163.225(3); ORS 161.405(2)(c); ORS 161.605(3). The 36-month PPS sentence, when combined with the 25-month prison sentence, thus exceeds the statutory maximum.

Although defendant did not object to the PPS term, the state concedes, and we agree, that the trial court erred; we have previously concluded that such error qualifies for plain-error review, and we have exercised our discretion to correct the error in circumstances that are indistinguishable from this case. *E.g.*, *State v. Carter*, 272 Or App 161,

162-63, 354 P3d 764 (2015); *State v. Ramos*, 254 Or App 748, 749-50, 295 P3d 176 (2013). Accordingly, we accept the state's concession, and, for the reasons noted in those cases, we exercise our discretion to correct the error here.

Remanded for resentencing; otherwise affirmed.

**AOYAGI, P. J.,** concurring in part, dissenting in part.

I agree with the majority that the evidence was legally sufficient to prove fourth-degree assault, such that the trial court did not err in denying defendant's motion for a judgment of acquittal (MJOA) on that count.[1] However, I disagree that the evidence was legally sufficient to prove attempted second-degree kidnapping. I would reverse the attempted kidnapping conviction and, accordingly, dissent as to that part of the opinion.

Defendant was charged with kidnapping by asportation, which occurs when a person, "with intent to interfere substantially with another's personal liberty, and without consent or legal authority, * * * [t]akes the person from one place to another[.]" ORS 163.225(1)(a). Taking a person "from one place to another" is the conduct element of kidnapping. It requires proof that the defendant "change[d] the position of the victim such that, as a matter of situation and context, the victim's ending place [was] qualitatively different from the victim's starting place." *State v. Sierra*, 349 Or 506, 513, 254 P3d 149 (2010), *adh'd to as modified on recons*, 349 Or 604, 247 P3d 759 (2011). Having the "intent to interfere substantially with another's personal liberty" is the intent element of kidnapping. It requires proof that the defendant intended to move the victim a substantial distance or to confine the victim for a substantial period of time. *State v. Wolleat*, 338 Or 469, 475, 111 P3d 1131 (2005) (explaining that "the liberty interest that the statute protects from interference is the interest in freedom of movement," and

---

[1] I disagree with the majority's reasoning on the assault charge only on one small point—which is that the fact of bleeding should not be given extra weight based on a family member "wip[ing] off" the blood and thus providing "treatment" for the injury. 332 Or App at 208. Bleeding itself is significant. That a wound is serious enough to require actual medical treatment is significant. The fact that a person or their family member wipes off blood is not significant.

"for the interference to be substantial, a defendant must intend either to move the victim a 'substantial distance' or to confine the victim for a 'substantial period of time'" (quoting *State v. Garcia*, 288 Or 413, 421, 605 P2d 671 (1980)).

In this case, the state relied on two witnesses to prove the kidnapping charge. K's next-door neighbor, Cheryl Coville, testified that, on the day in question, her door was open, she saw through a large picture window that K was approaching her closed gate, and she heard him say, "Help me, help me, call the police." Coville went outside to find out what was happening. Defendant walked up behind K and "pulled him back a little" by the chest. Coville turned and went inside to get her phone. When she returned 15 seconds later, defendant was gone, and K was approaching her house again.

Another neighbor, Ashlin Stewart, testified to some of what happened in that 15-second period. Stewart was in her back yard when she heard someone yelling for help, ran around front, and saw K and defendant standing on the grass in K's yard. They were in the grass "close to [Coville's] house, but they were still in [K's] yard." (The record is silent as to the distance between where Colville first saw K and where Stewart saw K, but the total distance between the houses is 75 feet.) Defendant, who is taller than K, was "hovering over" K, and his arms were "over" K's arms. The way defendant was standing looked to Stewart "like a tactic to get someone, you know, kind of into a house, or, you know, away from their point." Stewart ran up and said, "Hey, hey." Defendant immediately ran inside the house. Stewart assisted K in walking to Coville's house, including opening the gate and helping K up the stairs. The police soon arrived.

At the close of the state's evidence, defendant moved for a judgment of acquittal on the second-degree kidnapping charge. He argued that the evidence was insufficient to prove the conduct element, because there was no evidence that defendant took K anywhere, and was insufficient to prove the intent element, because "substantial" interference requires that "a victim must be moved a substantial distance or confined for a substantial period of time," and

there was no evidence that defendant intended to do either. The state responded—inaccurately—that all that it had to prove was that defendant moved K "from one type of place to another type of place," such as "from one address to another address," and that, although no one saw him move K, the evidence allowed a reasonable inference that defendant moved K from where Coville saw him to where Stewart saw him. The trial court summarily denied defendant's motion.

Later, when the trial court rendered its verdict in this bench trial, it found defendant not guilty of second-degree kidnapping but guilty of the lesser included offense of attempted second-degree kidnapping. The court explained that "[t]here was insufficient movement to get [K] from one place to another," such that the conduct element was not proved. However, the court found that defendant had intended to move K "back into the house," which would be "another" place within the meaning of the statute, and took a substantial step toward doing so by moving K the distance that he did, thus committing attempted kidnapping. *See* ORS 161.405(1) ("A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime.").

Given the court's conclusion at verdict that the evidence was insufficient to prove the conduct element of completed kidnapping, it appears that the court may have had attempted kidnapping in mind when it denied defendant's MJOA.[2] In any event, the parties agree that the issue presented on appeal is whether the evidence was legally sufficient to prove attempted kidnapping, particularly the intent element.

Evidence is legally sufficient to prove the intent element of kidnapping if it establishes that the defendant intended to move the person a substantial distance or to confine the person for a substantial period of time. *Wolleat*, 338 Or at 475. Here, the trial court concluded that the evidence was sufficient to prove that defendant intended to confine K

---

[2] The state did not plead attempted kidnapping, and the first express mention of attempt in the trial transcript is shortly before verdict. However, the parties implicitly agree that the court could deny defendant's MJOA if there was sufficient evidence of attempted kidnapping. We accept that premise without taking any position on it.

in the house. That is, to state all of the elements together, the court viewed the evidence as sufficient to prove that defendant took a substantial step toward taking K from the area near Coville's gate to the inside of K's house (attempted asportation), with the intent to confine K in the house for a substantial period of time (intent).

I disagree with the majority that the evidence was legally sufficient to prove that defendant intended to take K into the house and confine him there. The record is unusually slim. K did not testify as to why he walked with defendant from the area near Coville's gate to the place in K's yard where Stewart saw him, whether defendant used any physical force in that process, or whether defendant threatened him in any way in that process. Further, no one saw the men moving between the two places, and, when Stewart saw them in K's yard, they were standing, not moving. In that context, defendant's intent is particularly opaque. Even if the evidence is sufficient to prove that defendant "took" K against his will from the area near Coville's gate to the place in K's yard where Stewart saw him, the evidence is too vague to allow a nonspeculative finding regarding his ultimate intent. Defendant might have intended to force K into K's house to confine him there for a substantial time, which would be kidnapping, or he might have intended only to take K back onto his own property where he could try to talk him out of involving the neighbors or the police, which would not be kidnapping (although it might be harassment).

With respect to an MJOA, we must allow factfinders to make reasonable inferences from the evidence, *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994), but we must not allow them to take "too great an inferential leap" or to engage in "stacking of inferences to the point of speculation," *State v. Bivins*, 191 Or App 460, 468, 470, 83 P3d 379 (2004). Further, when multiple possible "inferences are in equipoise and there are no other facts which would aid the jury in deciding whether to draw one inference or the other[,]" it "would simply invite jury speculation" to submit the matter to the factfinder, and so it is "necessary to say as a matter of law that the state has not met its burden of proof." *State v. Hall*, 269 Or 63, 70-71, 523 P2d 556 (1974).

In my view, this case falls on the side of impermissible speculation, as to whether defendant intended to take K into the house against his will and confine him there for a substantial period of time. I would affirm defendant's conviction for fourth-degree assault, but reverse his conviction for attempted second-degree kidnapping, and remand for resentencing.

Accordingly, I concur in part and dissent in part.