No. 356 April 29, 2026 191

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICHOLAS ANTHONY WHALEY,
*Defendant-Appellant.*

Lane County Circuit Court
24CR10279; A184994

Debra E. Velure, Judge.

Submitted March 4, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Sarah De La Cruz, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Ryan Kahn, Assistant Attorney General, filed the brief for respondent

Before Shorr, Presiding Judge, Powers, Judge, and O'Connor, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

Defendant appeals from an amended judgment of conviction for three counts of felony fourth-degree assault constituting domestic violence, ORS 163.160(3)(c) (Counts 1-3), raising three assignments of error. In his first two assignments of error, defendant contends that the trial court erred in denying his motions for judgment of acquittal on Counts 2 and 3. In his third assignment of error, he contends that the trial court erred in denying his motion for a mistrial. For the reasons that follow, we affirm.

Because the parties are familiar with the undisputed historical and procedural background, we do not provide a recitation for this nonprecedential memorandum opinion. Instead, we provide the necessary background when discussing each of defendant's assignments of error.

*Motions for Judgment of Acquittal*. When we review the denial of a motion for judgment of acquittal, we review the evidence and all reasonable inferences from it in the light most favorable to the state to determine whether a rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

A person commits the crime of fourth-degree assault when the person "intentionally, knowingly or recklessly causes physical injury to another." ORS 163.160(1)(a).[1] On appeal, defendant argues that the trial court erred by denying his motions for judgment of acquittal on Counts 2 and 3, because as to those counts, the "state failed to present sufficient evidence that defendant caused a physical injury" to the victim.

"Physical injury" is defined by statute as "impairment of physical condition or substantial pain." ORS 161.015(7). And case law has interpreted "[i]mpairment of physical condition" to mean "harm to the body that results in a reduction in one's ability to use the body or a bodily organ for less than a protracted period of time, and can include impairment of the ordinary function of a body part." *State*

---

[1] Fourth-degree assault is generally a misdemeanor, ORS 163.160(2), and can be elevated to a felony in specified circumstances, ORS 163.160(3).

*v. Staniford*, 332 Or App 203, 207, 548 P3d 855, *rev den,* 372 Or 763 (2024) (internal quotation marks and citation omitted). To qualify, the impairment "must be material, and not merely *de minimis*." *State v. Hendricks*, 273 Or App 1, 11, 359 P3d 294 (2015), *rev den*, 358 Or 794 (2016). Materiality is "a function of a variety of case-specific circumstances, including the character, degree, and duration of the asserted impairment."[2] *Id.*

Count 2 was based on defendant's conduct of hitting the victim in the throat hard enough to cause her to fall back against a wall. Regarding that count, as defendant sees it, "the evidence of a physical injury included [that the victim's] throat hurt and she had difficulty swallowing." Defendant contends that that was insufficient to demonstrate impairment of physical condition under *State v. Yerton*, 317 Or App 538, 505 P3d 428 (2022), because the evidence merely established that the victim's "ability to swallow was affected but not reduced."

We conclude that the trial court did not err in denying defendant's motion for judgment of acquittal on Count 2. As defendant notes, the evidence of physical injury included that the victim's "throat hurt and she had difficulty swallowing." It also included evidence that the victim's pain resulting from defendant's conduct—*i.e.*, "that [the victim] felt like [she] had a sore throat when [she] swallowed"—lasted for "a couple days." In our view, that was sufficient evidence of "impairment of physical condition" within the meaning of ORS 161.015(7), because the victim's ability to engage in a normal (and essential) activity—swallowing—was made more difficult due to the injury caused by defendant. *See State v. Glazier*, 253 Or App 109, 113, 288 P3d 1007 (2012), *rev den,* 353 Or 280 (2013) (concluding that there was sufficient evidence of "impairment for purposes of establishing physical injury" where "the victim testified that the pain arising from her injuries made it more difficult for her to engage in normal activities such as walking up

---

[2] As explained below, we resolve defendant's first two assignments of error in the state's favor because we conclude that the evidence was sufficient for a jury to find "impairment of physical condition." We do not foreclose, however, that the conduct underlying the convictions may have also caused the victim "substantial pain" within the meaning of ORS 161.015(7).

and down stairs and lifting small objects"). Put differently, the ordinary function of one of the victim's body parts—her throat—was impaired. *See State v. Higgins*, 165 Or App 442, 448, 998 P2d 222 (2000) (noting "[a] swollen lip impairs the ordinary function of a body part, the mouth").

In reaching that conclusion, we note that defendant's reliance on *Yerton* is misplaced. In *Yerton*, we determined that a victim's "statement *** that he was breathing fast" because he "was scared" during an incident in which the defendant put her hands on the victim's neck allowed for "the inference that defendant's conduct *affected* [the victim's] breathing," but did not "allow for the reasonable inference that [the victim's] ability to breathe was reduced." 317 Or App at 543 (emphasis in original). We, therefore, concluded that the evidence was insufficient for a trier of fact to find that the defendant's conduct "impaired [the victim's] breathing." *Id.* at 545. This case, however, is not like *Yerton*, because the evidence in this case, as noted above, included evidence that the pain resulting from the victim's injuries made it more difficult for her to swallow. Accordingly, we reject defendant's argument and conclude that the trial court did not err in denying the motion for judgment of acquittal on Count 2.

Regarding Count 3, that count was based on defendant's conduct of dragging the victim by her hair for about 10 feet from a bedroom to a hallway. Defendant contends, among other points, that the evidence of "physical injury" was legally insufficient as to that count, because although there was evidence that the victim's "head and neck were swollen, red, and bruised for a couple of days and some hair was missing," the state "presented insufficient evidence of an impairment of a physical condition."

A primary difficulty with defendant's argument as to Count 3, among other difficulties, is that the state presented evidence that defendant's conduct caused the victim neck pain. And, based on the evidence, a jury could determine that that pain made it "more difficult for her to engage in normal activities." *Glazier*, 253 Or App at 113. Specifically, a witness testified that, after the incident underlying Count 3, the victim "couldn't use her neck very much," such that,

when driving, the victim "didn't want to move her neck" in a certain way; that when the victim "went to pick something up, she didn't want to bend down to pick it up off the ground"; and that the victim "couldn't really move her neck to put her hair up *** how she usually does." Accordingly, given our review of the evidence using the well-established standard of review, we conclude that the trial court did not err when it denied defendant's motion for judgment of acquittal on Count 2.

*Motion for Mistrial.* As noted, in his third assignment of error, defendant contends that the trial court erred when it denied his motion for a mistrial.

When a party moves for a mistrial, "the trial court must decide whether to grant the motion, deny the motion but take curative steps, or deny the motion without taking any curative steps." *State v. Northey*, 340 Or App 318, 330, 571 P3d 219 (2025). The trial court's decision "is reviewable for an abuse of discretion, taking into consideration the seriousness of the prejudice and the manner in which the court sought to cure the error, with the decisive issue being whether defendant's ability to receive a fair trial was impaired." *Maney v. Angelozzi*, 285 Or App 596, 614-15, 397 P3d 567 (2017) (internal quotation marks, citations, and brackets omitted). Ultimately, we are required "to decide whether, under the circumstances as a whole, defendant was denied the right to a fair trial, as a matter of law, by the events that transpired at trial." *State v. Kurz*, 342 Or App 772, 785, 577 P3d 866, *rev den*, 374 Or 616 (2025) (internal quotation marks omitted). We have noted that, in cases "involving inadmissible comments suggesting that a defendant has a prior criminal record, the level of prejudice that a defendant suffers varies depending on the facts of each case." *State v. Woodall*, 259 Or App 67, 75, 313 P3d 298 (2013), *rev den*, 354 Or 735 (2014).

Here, the victim's friend testified that, before calling the police to report defendant's conduct, the victim had called defendant's parents and "a parole officer." After direct examination of the victim's friend ended, defendant told the trial court that he had a matter for the court, and the jury was excused. Defendant then noted his view that that

testimony was in violation of a "pretrial ruling where we were not to have any conversation about prior convictions or the like" and moved for a mistrial. The court offered to give a curative instruction—to "tell the jury they should disregard that testimony"—but also noted that "sometimes bringing * * * attention to it is worse," and defendant told the court that he "would rather not bring attention" to it "at this time." The trial court ultimately determined that a curative instruction was not warranted and denied defendant's motion for a mistrial.

On appeal, in arguing that the trial court erred in denying his mistrial motion, defendant highlights two additional aspects of the trial that, in his view, contribute to the prejudice that he claims that he suffered. First, defendant observes that earlier in the trial, prior to defendant's motion for a mistrial, he had objected when the victim testified that she called defendant's "PO" when she was attempting to figure out how to get defendant to move out of her house and had left a voicemail for the "PO" in which she said, "I have a question." The trial court struck that testimony as hearsay.[3] Second, that on redirect, the victim testified that she was "starting to feel used" and taken "advantage of" by defendant, and that she felt like she was "one of these other girls" from defendant's "history." The trial court struck that testimony as nonresponsive.

Ultimately, having considered the record and the parties' arguments, and recognizing that "the trial court is in the best position to assess * * * any potential prejudice to defendant," *State v. Pratt*, 316 Or 561, 583, 853 P2d 827, *cert den*, 510 US 969 (1993), we conclude that the court did

---

[3] We note that, on appeal, both defendant and the state appear to understand the trial court's ruling to include striking the victim's testimony that she called defendant's "PO," not just her testimony that she left a voicemail wherein she said, "I have a question."

From the context of the trial court's ruling, which was based on its view that the contents of the voicemail message were hearsay, we do not share the same understanding of the record as the parties. That is, we do not understand the trial court to have struck the victim's statement that she called defendant's "PO." However, because we would reach the same result in this case regardless of how we understand the scope of that particular ruling by the trial court, we proceed with our analysis under the assumption that the parties' understanding is correct regarding the scope of the testimony that the trial court struck.

not abuse its discretion in denying defendant's motion for a mistrial.

As an initial matter, not every reference to prior acts of a defendant from which the jury might view defendant in a negative light requires a mistrial, and we have concluded that seemingly more prejudicial comments about prior conduct can be cured through an appropriate curative instruction. *See, e.g.*, *Woodall*, 259 Or App at 77 (concluding that, in a sex abuse trial, a curative instruction was sufficient to mitigate jury learning that the defendant was a registered sex offender); *see also State v. Garrison*, 266 Or App 749, 756, 340 P3d 49 (2014), *rev den*, 356 Or 837 (2015) (concluding that a curative instruction was appropriate in a sex abuse trial to mitigate prejudice arising from testimony that defendant had previously been investigated for sexual abuse). Additionally, not every improper statement from a witness requires a curative instruction for a defendant to receive a fair trial. *See Pratt*, 316 Or at 583 (concluding that there was no abuse of discretion in denying a motion for mistrial where, during the penalty phase retrial of an aggravated murder trial, the jury learned that the defendant was "on death row," and where the comment was "isolated and made in passing" and the state "did not capitalize on the disclosure in any way"); *see also State v. Farrar*, 309 Or 132, 163-64, 786 P2d 161 (1990) (concluding that the trial court did not abuse its discretion in denying a mistrial, where a state's witness mentioned a polygraph examination, because the reference was isolated and made only in passing, and the results of the test were not disclosed, although no curative instruction was given because the trial court believed it would "call further attention" to the issue).

Given the circumstances presented in this case, we cannot conclude that the trial court was required on this record to declare a mistrial or give a curative instruction over defendant's objection to a curative instruction when the trial court offered one in order to ensure that defendant had a fair trial, when both defendant and the trial court indicated that giving a curative instruction would call attention to the improper testimony, and when no witness identified that defendant's prior convictions were also for assault or

gave details about those convictions. That is, in view of the nature of the information conveyed by the improper testimony—that defendant had a "PO" or parole officer—and the record as a whole, including the prior statements that the trial court struck, and that the record does not reflect that the state attempted to "capitalize on the disclosure in any way," *Pratt*, 316 Or at 583, we cannot conclude that "defendant was denied the right to a fair trial, as a matter of law, by the events that transpired at trial," *Kurz*, 342 Or App at 785.

    Affirmed.